IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HARVEST NATURAL RESOURCES, INC., *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-18-483 |
| JUAN JOSE MENDOZA GARCIA, *et al.*, | § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

**I.  Background**

In this lawsuit, Harvest alleges that in November 2012, Juan Jose Garcia Mendoza[1] approached Juan Francisco Clerico, a Harvest-Vinccler director, in Caracas, Venezuela, and demanded that Harvest pay a $10 million bribe as a condition to securing the Venezuelan government's approval of Harvest's planned sale of its stake in Petrodelta, a Venezuelan exploration and production company. *Id.* at ¶¶ 25.  Harvest alleges that Garcia had demanded similar bribes on two prior occasions from companies that had also entered into agreements to purchase Harvest's interests in Venezuela. *Id.* at ¶¶ 27, 39.  Harvest alleges that Garcia solicited these bribes "knowing and intending that the solicitation[s] would be conveyed to Harvest in Houston, Texas, and that any bribe, if paid, would necessarily come from Harvest's bank accounts in the United States." *Id.* at ¶¶ 25, 39.  Because Harvest and the purchasing companies refused to pay the bribes, the sales that

---

[1] Harvest alleges that Garcia "works as a consultant in the oil and gas industry for companies, including United States- and Texas-based companies, that conduct business in Venezuela.  Garcia is an owner, officer, and employee of Petro Consultores S.C., Petro Consultores International Trading Company, Inc., Petroconsultores (Barbados) Ltd., and Petroconsultores, Inc.  Garcia also was an owner and manager of Azure 904 LLC during the relevant timeframe."  (Docket Entry No. 14 at ¶ 7).

1

had been publicly announced were thwarted. *Id.* at ¶¶ 32, 42. Harvest alleges that its refusal to pay the bribe made it unable to sell its Venezuelan assets for four years, and then only at a discount of more than $470 million from the original deal. *Id.* at ¶¶ 43-47.

Garcia's wife accepted service of process for him, and his sister accepted service as the registered agent for two of the entity defendants, and Garcia waived service of process as to himself and the entity defendants. On April 13, 2018, all of these defendants moved to dismiss for lack of personal jurisdiction, relying on Garcia's declaration. (Docket Entry No. 32). Harvest disputed most, if not all, of Garcia's declaration and moved for jurisdictional discovery. (Docket Entry No. 33). On April 30, 2018, the court heard oral argument on Harvest's motion. (Docket Entry No. 46). The court took the issue under advisement and extended the deadlines by 60 days.

Based on the pleadings, the briefing, the record, the parties' arguments, and the applicable law, the court grants Harvest's motion for jurisdictional discovery. (Docket Entry No. 33). The parties have until **June 28, 2018**, to conduct discovery limited to the defendants' jurisdictional ties and contacts. Harvest may depose Garcia, and he must appear, but he may choose to appear in either Miami, Florida, or Houston, Texas. The deposition is to take place at a date, location, and time that the parties agree to or that the court orders.

The parties must complete jurisdictional discovery by **July 6, 2018**. Harvest must respond to the defendants' motion to dismiss by **August 3, 2018**. The defendants must file a reply by **August 10, 2018**. Oral argument will be held on **August 24, 2018**, at **1:00 p.m.**

II.     **The Legal Standard for Jurisdictional Discovery**

A court may grant jurisdictional discovery when the plaintiff makes a "preliminary showing of jurisdiction" over a defendant. *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). A

preliminary showing is less than a prima facie showing. When the plaintiff makes a prima facie showing, jurisdictional discovery is unnecessary. When the lack of personal jurisdiction is clear, discovery is also unnecessary. *Kelly v. Syria Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (internal quotation marks omitted). The Fifth Circuit "affirms denials of discovery on questions of personal jurisdiction in cases where discovery sought could not have added any significant facts." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000) (internal quotation marks omitted).

"If the plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (internal quotation marks and alterations omitted); *see also Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1235 (Fed. Cir. 2010) (in the Ninth Circuit, jurisdictional "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary" (internal quotation marks omitted)).

### III. Analysis

Harvest alleges the following:

25. In November 2012, Defendant Garcia approached Juan Francisco Clerico, a director of Harvest-Vinccler, S.A., in Caracas, Venezuela, regarding the agreed sale of Harvest's stake in Petrodelta. Garcia informed Clerico that Garcia was speaking on behalf of Defendant Ramirez and at Ramirez's request. Garcia stated that Harvest must pay USD $10 million in order to receive contract approval from Venezuela's Ministerio del Poder Popular de Petroleo y Mineria. Garcia solicited this bribe knowing and intending that the solicitation would be conveyed to Harvest in Houston, Texas, and that any bribe, if paid, would necessarily come from Harvest's bank accounts in the United States.
. . .

27. In late November or early December 2012, Pertamina informed Edmiston that

3

> Pertamina had received a similar bribe demand from Defendant Garcia. Pertamina also declined to pay the bribe.
>
> . . .
>
> 35. Defendant Garcia visited Houston from October 10, 2013, to October 20, 2013.
>
> . . .
>
> 39. In approximately fall 2014, Javier Alfredo Iguacel, Vice President of Business Development at Pluspetrol, informed Edmiston in Houston that he had been contacted by Defendant Garcia. Yet again, Garcia demanded a bribe payment in order to receive contract approval from Venezuela's Ministerio del Poder Popular de Petroleo y Mineria. Garcia demanded the bribe knowing that the demand would again be conveyed to Harvest in the United States. Harvest and Pluspetrol refused to pay the bribe.

(Docket Entry No. 14 at ¶¶ 25, 27, 35, 39).

In its motion for jurisdictional discovery, Harvest asserts that Garcia's declaration contains misrepresentations that understate and distort his jurisdictional contacts. (Docket Entry No. 33 at 2). Specifically, Harvest argues that:

- Garcia removed facts from his website touting his and his companies' work for oil and gas companies such as Chevron, Shell, and Total, each of whom has operations in Texas, contrary to his statements that his entities had never done business with Texas, directly or indirectly (Docket Entry No. 32-1 at ¶ 8), and that he had never performed services for any Texas residents or entities registered to do business in Texas and had never conducted business with any Texas entities, *id.* at ¶ 9;

- Garcia omitted mentioning his United States residency in his declaration, *id.* at 1; and

- Garcia incorrectly stated that several of his entities are defunct, never conducted any actual business, or were failed business ventures that never got off the ground, *id.* at ¶¶ 8, 10–12.

(Docket Entry No. 33 at 5–9).

Harvest has sufficiently put at issue Garcia's credibility and pointed to facts that, while disputed, would make a preliminary showing of jurisdiction. *Fielding*, 415 F.3d at 429. Harvest seeks discovery into facts and issues that are reasonably particularized and that, if proved, would show the contacts between Garcia and the United States necessary for personal jurisdiction as to Harvest's Racketeer Influenced and Corrupt Organizations Act claim.

The Fifth Circuit has held that "when a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States." *Busch v. Buchman, Buchman & O'Brien*, 11 F.3d 1255, 1258 (5th Cir. 1994). Subsection (b) of the civil RICO section on service of process states:

> (b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

18 U.S.C. § 1965.

"Although the Fifth Circuit has not expressly decided this issue, many courts within this Circuit and elsewhere have concluded that RICO provides for nationwide service of process." *Dimas v. Vanderbilt Mortg. & Fin., Inc.*, No. CIV. A. C-10-68, 2010 WL 1875803, at *4 (S.D. Tex. May 6, 2010) (collecting cases); *Meganathan v. Signal Int'l L.L.C.*, No. 1:13-CV-497, 2014 WL 11512241, at *2 (E.D. Tex. July 3, 2014), *report and recommendation adopted*, No. 1:13-CV-497, 2014 WL 11512244 (E.D. Tex. Sept. 9, 2014) ([T]he majority of circuit courts have determined that § 1965(b) confers nationwide service of process in RICO cases."). Section 1965(b) permits service in "any judicial district" when "the ends of justice require it," suggesting nationwide service of process. This interpretation is consistent with congressional intent. H.R.Rep. No. 91-1549 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4034 ("Subsection (b) provides nationwide service of process on parties, if the ends of justice require it, in actions under section 1964 [civil remedies].").

The court agrees that RICO allows for nationwide service of process. The question is whether the discovery Harvest seeks would suggest with reasonable particularity that Garcia has minimum contacts with the United States. *Busch*, 11 F.3d at 1258.

5

A defendant has minimum contacts with a forum state if she or it "purposefully avails [her or] itself of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Minimum contacts are "subdivided into contacts that give rise to 'specific' personal jurisdiction and those that give rise to 'general' personal jurisdiction." *Oblio Telecom, Inc. v. Patel*, 711 F. Supp. 2d 668, 673 (N.D. Tex. 2008) (citing *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). The information Harvest seeks could plausibly show either, or both.

Jurisdictional discovery may show that Garcia's contacts with Florida or another state are so "'continuous and systematic' as to render [him] essentially at home in the forum," subjecting him to jurisdiction in Texas under RICO. *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2851 (2011)). Although "[t]he 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum,'" *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Submersible Sys. Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)), Harvest has made a showing that Garcia resided and operated business entities out of Florida, which could establish the requisite continuous and systematic contacts.

Jurisdictional discovery may show that Garcia "purposefully directed [his] activities at [Texas] and [that] the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008). Though specific jurisdiction requires that the defendant's contacts with the forum be more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person," even "isolated or sporadic contacts" can support specific jurisdiction "so long as the plaintiff's claim relates to or arises out of those contacts." *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498-99

6

(5th Cir. 2012) (internal quotation marks omitted). Harvest alleges that Garcia "kn[ew] and intend[ed] that [his] solicitation would be conveyed to Harvest in Houston, Texas, and that any bribe, if paid, would necessarily come from Harvest's bank accounts in the United States." (Docket Entry No. 14 at ¶ 25). Although Garcia's connection to Texas may be too attenuated to confer specific jurisdiction—Garcia allegedly bribed Harvest-Vinccler, a Dutch company, largely owned by HNR Energia, a Curacao company, which was owned by Harvest—if discovery establishes that Garcia's bribe solicitation was an intentional tort directed at Texas, that may suffice. *See Lewis Fresne*, 252 F.3d 352, 358–59 (5th Cir. 2001) (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir.1999)). "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien*, 195 F.3d at 213.

Harvest has made a sufficient showing that Garcia's declaration may misrepresent, distort, or conceal Garcia's contacts with the United States. (Docket Entry No. 33 at 4–11). Harvest has put Garcia's credibility and knowledge directly at issue, and Harvest is not "in a position to test [that] credibility and knowledge." Harvest has met its burden to make a preliminary showing of jurisdiction to warrant jurisdictional discovery. *Fielding*, 415 F.3d at 429. Harvest has "present[ed] factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts" between Garcia and Texas or Florida or both, under more than one theory of specific or general jurisdiction. *Eurofins Pharma*, 623 F.3d at 157. The motion for jurisdictional discovery is granted.

## IV. Conclusion

Harvest's motion for jurisdictional discovery, (Docket Entry No. 33), is granted. The parties have until **June 28, 2018**, to conduct jurisdictional discovery limited to the defendants' jurisdictional ties and contacts. Harvest may depose Garcia, and he must appear, but he may choose to appear in

7

either Miami, Florida, or Houston, Texas. The parties must have completed jurisdictional discovery by **July 6, 2018**. Harvest must respond to the defendants' motion to dismiss by **August 3, 2018**; the defendants must reply by **August 10, 2018**; and oral argument will be held on **August 24, 2018**, at **1:00 p.m.** in Courtroom 11-B.

SIGNED on May 11, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge