UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HARVEST NATURAL RESOURCES, INC., and HNR ENERGIA B.V. § § § *Plaintiffs* § v. § JUAN JOSÉ GARCIA MENDOZA, § PETRO CONSULTORES, S.C., PETRO § CONSULTORES INTERNATIONAL § TRADING COMPANY, INC., § PETROCONSULTORES (BARBADOS), § LTD., PETROCONSULTORES, INC., § AZURE 904, LLC, RAFAEL DARIO § RAMIREZ CARRENO, EULOGIO § ANTONIO DEL PINO DIAZ, and JOSE § ANGEL GONZALEZ ACOSTA, § § *Defendants.* § | CIVIL ACTION: 4:18-cv-00483 |

### PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT RAFAEL DARIO RAMIREZ CARRENO

Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, Plaintiffs Harvest Natural Resources, Inc. and HNR Energia B.V. (collectively "Harvest") file this Motion for Default Judgment against Defendant Rafael Dario Ramirez Carreno ("Ramirez"), and would respectfully show the Court as follows:

### I.   PROCEDURAL HISTORY

1. On February 16, 2018, Harvest filed its Original Complaint in the above-captioned proceeding against Ramirez and other defendants, seeking, among other things, recovery of over $470,000,000 in lost profits, which resulted from defendants' years-long extortionate bribery scheme [ECF No. 1].

2. Service of Summons and Complaint on Ramirez was effected in accordance with Federal Rule of Civil Procedure 4(e)(2)(B) on February 16, 2018 by leaving a copy of the

1

Complaint at Ramirez's dwelling or usual place of abode with Alexandra Leonardo, a domestic employee who resided at the residence [ECF No. 10].  Proof of service was filed with the Court on February 21, 2018.  *Id.*

3.	The time for Ramirez to file a responsive pleading or otherwise defend the claims brought against him expired on March 9, 2018.  Fed. R. Civ. P. 12(a)(1)(A)(i).  Pursuant to Rule 55(a), Harvest requested an entry of default against Ramirez on July 26, 2018 [ECF No. 59].  To date, Ramirez has not filed an answer or other responsive pleading or otherwise defended this suit.  Harvest now moves for default judgment against Ramirez pursuant to Rule 55(b).

## II.	LEGAL STANDARDS

4.	**Entering a Default.**  "A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (italics omitted).  When a defendant's failure to plead or defend the suit is shown by affidavit or otherwise, "the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).

5.	**Entering a Default Judgment.**  After a default has been entered, the plaintiff may apply for a judgment based on such default.  Fed. R. Civ. P. 55(b); *Brown*, 74 F.3d at 141.  Valid service of process in accordance with Rule 4 is a prerequisite to obtaining a default judgment.  *Thanco Prod. & Imports, Inc. v. Kontos*, No. CIV.A. H-08-3046, 2009 WL 540963, at *2 (S.D. Tex. Mar. 3, 2009) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)).  Where a defendant has received actual notice of an action, requirements governing service of process are to be "broadly construed." *Nowell v. Nowell*, 384 F.2d 951, 953 (5th Cir. 1967).

803758.2

6. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, "the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). In all other cases, a plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2).

### III. ARGUMENT

7. Harvest is entitled to an entry of default and default judgment by the clerk because Ramirez failed to answer, respond, or otherwise appear in this case after being legally served in accordance with Rule 4(e) and because the damages sought herein are a sum certain or a sum that can be made certain by computation. Fed. R. Civ. P. 55(a)–(b)(1). As proof that Harvest is entitled to the relief requested, Harvest relies upon the factual allegations laid out in its First Amended Complaint [ECF No. 14], Request for Entry of Default and accompanying exhibit of Alexander M. Wolf [ECF No. 59], and the following documentary evidence:

| | |
|---|---|
| Exhibit A | Affidavit of Keith L. Head, former Vice President and General Counsel of Harvest Natural Resources, Inc. |
| Exhibit A-1 | Press Release, dated June 21, 2012, announcing sale of Harvest's Venezuelan assets to PT Pertamina |
| Exhibit A-2 | SEC Form 8-K, dated June 21, 2012 |
| Exhibit A-3 | Press Release, dated December 16, 2013, announcing sale of Harvest's Venezuelan assets to Petroandina Resources Corporation N.V |
| Exhibit A-4 | SEC Form 8-K, dated December 16, 2013 |
| Exhibit A-5 | Press Release, dated June 30, 2016, announcing sale of Harvest's Venezuelan assets to CT Energy Holding SRL |

803758.2

    Exhibit A-6    Press Release, dated October 7, 2016, announcing closing of Harvest's sale of Venezuelan assets to CT Energy Holding SRL

8. Alternatively, should the Court determine that the damages sought are not a sum certain or a sum that can be made certain by computation, Harvest requests a hearing so that the proper amount of damages may be determined. Fed. R. Civ. P. 55(b)(2).

  A. **Ramirez was properly served in accordance with Rule 4(e)(2) when copies of the summons and complaint were served upon a domestic employee who resided at Ramirez's New York residence.**

9. Pursuant to Rule 4(e)(2)(B), "an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by: . . . leaving a copy of [the summons and the complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B). It is beyond dispute that Ramirez is not a minor, an incompetent person, or a person whose waiver has been filed. Fed. R. Civ. P. 4(e)(2)(B). Accordingly, service under Rule 4(e)(2)(B) is appropriate.

10. Service upon a defendant's domestic employee is effective under Rule 4(e)(2)(B), provided the employee actually lives in the defendant's residence and is of suitable age and discretion. *See, e.g.*, *Kelly, Sutter, Mount & Kendrick, P.C. v. Alpert*, 234 F. App'x 246, 247 (5th Cir. 2007) (affirming trial court's finding that service under Rule 4(e)(2) was proper where housekeeper who received process resided in the defendant's residence); *Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1016–17 (10th Cir. 1990) (finding that service of process upon defendant's cook at defendant's residence was sufficient under Rule 4(d)(1) [now Rule 4(e)(2)], absent showing that cook did not reside at defendant's home). A process server's declaration, signed under penalty of perjury, that process was served upon a person of suitable

age and discretion is prima facie evidence of valid service, "which can be overcome only by strong and convincing evidence." *People's United Equip. Fin. Corp. v. Hartmann*, 447 F. App'x 522, 524 (5th Cir. 2011) (citing *O'Brien v. R.J. O'Brien & Associates, Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993)).

11. Ramirez was legally served under Rule 4(e)(2)(B) when a copy of the summons and complaint was left at his New York residence with Alexandra Leonardo, a domestic employee who resided at the residence. [ECF Nos. 10, 59]. The declaration of Avner Rahimov, signed under penalty of perjury, establishes that Leonardo was approximately 60 years old at the time of service and is a person of suitable age and discretion. [ECF No. 10].

### B. Ramirez's New York residence is his "dwelling or usual place of abode" within the meaning of Rule 4(e)(2)(B).

12. The Fifth Circuit has explained that "no hard and fast rule can be fashioned to determine what is or is not a party's 'dwelling house or usual place of abode' within the rule's meaning." *Nowell*, 384 F.2d at 953. Instead, the "practicalities of the particular fact situation determine whether service meets the requirements of [4(e)(2)(B)]."[1] *Id.* Notably, a defendant can have more than one dwelling or usual place of abode, provided each contains sufficient indicia of permanence. *Norris v. Causey*, 869 F.3d 360, 368 (5th Cir. 2017); *Blackhawk Heating & Plumbing Co. v. Turner*, 50 F.R.D. 144, 149 (D. Ariz. 1970) (citing *Nowell* and finding that defendant's failure to leave a forwarding address was a factor in determining that apartment where process was served was defendant's dwelling or usual place of abode). Moreover, a defendant need not be living at the location where process is served for that location to qualify as his dwelling or usual place of abode under Rule 4(e)(2). *Thanco Prod. & Imports*, 2009 WL

---

[1] At the time *Nowell* was decided, Rule 4(e)(2)(B) was 4(d)(1).

540963, at *3 (citing *Ali v. Mid–Atlantic Settlement Services, Inc.,* 233 F.R.D. 32, 36 (D.D.C. 2006)).

13. Ramirez's New York residence is his "dwelling or usual place of abode" within the meaning of Rule 4(e)(2)(B). Harvest's independent investigation located a single address for Ramirez at 16 E. 81st Street, New York, New York, 10028. Process was served at that address and accepted on Ramirez's behalf.

14. As set forth in Harvest's First Amended Complaint, Ramirez is believed to be the ultimate target of U.S. and Venezuelan probes into corruption within PDVSA. [ECF No. 14 at ¶ 56]. Accordingly, Ramirez is believed to be on the run, as no additional or forwarding addresses have been identified for him.

15. The New York residence at which Ramirez was served remains his "dwelling or usual place of abode," because a live-in housekeeper accepted service for Ramirez; mail subsequently sent to Ramirez's attention at the same address was accepted, *infra*; Ramirez did not leave a forwarding address, *see Blackhawk Heating & Plumbing Co*, 50 F.R.D. at 149; and Ramirez had actual notice of the lawsuit.

    **C.    Rule 4(e)(2)(B)'s "dwelling or usual place of abode" requirement should be broadly construed because Ramirez had actual notice of the lawsuit.**

16. To the extent there are any doubts about whether Ramirez was served at his dwelling or usual place of abode, such doubts should be resolved in Harvest's favor, as Ramirez's had actual notice of this suit. Where a defendant has received actual notice of the suit, Rule 4(e)(2)(B) should be broadly construed. *Nowell*, 384 F.2d at 953; *Karlsson v. Rabinowitz,* 318 F.2d 666 (4th Cir.1963) (service of process left at defendant's former residence was effective because defendant had actual knowledge of the suit).

803758.2

17. Ramirez's comments to the press on the same day process was served in New York demonstrate that Ramirez received actual notice of the suit. On February 20, 2018, an Associated Press article regarding Harvest's lawsuit stated: "Ramirez, contacted Friday [February 16, 2018] by AP, *declined to comment on the suit* but *reiterated that he never asked for bribes* or played a role in the selection of PDVSA's business partners." [ECF No. 59-1]. Ramirez's comments indicate that he had knowledge of the existence of the suit against him *and* of its allegations.

18. Following service of process at Ramirez's New York residence, counsel for Harvest took additional steps to ensure that Ramirez had actual notice of this lawsuit, including attempting to contact him by phone and leaving voice messages, sending text messages, and sending WhatsApp messages, using numbers obtained during Harvest's investigation. [ECF No. 59-1]. Harvest's counsel also sent packages containing court documents to Ramirez's New York address via U.S. First-Class Certified Mail, Return Receipt Requested on February 28, 2018, March 9, 2018, and April 6, 2018, all of which were delivered and signed for. An additional package of court documents was sent to Ramirez's New York address on May 23, 2018. Only this last package was returned to Harvest's counsel after being marked as "Refused, Unable to Forward."

19. Ramirez's actual notice of the suit combined with the fact that court documents were delivered to his New York address and accepted—followed by a delivery that was affirmatively refused—warrants broad construction of Rule 4(e)(2)(B)'s requirement that defendants be served at their "dwelling or usual place of abode." *Nowell*, 384 F.2d at 953. Because Ramirez was properly served under Rule 4(e)(2)(B) and has since refused to answer or

803758.2

otherwise defend the claims brought against him, Harvest is entitled to entry of default and a default judgment.

### D. Harvest's damages are a "sum certain or a sum that can be made certain by computation" within the meaning of Rule 55(b)(1).

20. Pursuant to Rule 55, "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—*must* enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1) (emphasis added). Harvest is entitled to a default judgment from the clerk in the amount of $472,039,552.66, which is a sum certain or a sum that can be made certain by computation in accordance with Rule 55(b)(1).

21. On June 21, 2012, Harvest Natural Resources announced that its wholly-owned subsidiary HNR Energia B.V. had signed a Share Purchase Agreement with PT Pertamina (the "Pertamina Deal") to sell all of its Venezuelan assets for an all-cash transaction totaling $725 million. Exhibits A, A-1, A-2 at 2. The Pertamina Deal was subject to approval by the Venezuelan government. Exhibits A-1, A-2 at 2. Following the announcement of the Pertamina Deal, Ramirez and other co-conspirators directed an associate to solicit a multi-million dollar bribe from Harvest, which Harvest refused to pay. As a result of Harvest's refusal to pay the bribe demand, the Venezuelan government withheld approval, causing the Pertamina Deal to fall through.

22. Thereafter on December 16, 2013, Harvest announced that it had entered into a Share Purchase Agreement with Petroandina Resources Corporation N.V. (the "Petroandina Deal"). Exhibits A, A-3, A-4 at 2. The Petroandina Deal involved two transactions for a total cash purchase price of $400 million. Exhibits A-3, A-4 at 2. Harvest closed the first transaction

for $125 million upon execution of the Share Purchase Agreement. Exhibits A-3, A-4 at 2. The second all-cash transaction in the amount of $275 million was subject to approval by the Venezuelan government. Exhibits A-3, A-4 at 2.

23. Following the announcement of the Petroandina Deal, Ramirez and other co-conspirators directed the same associate to solicit another multi-million dollar bribe from Harvest, which Harvest again refused to pay. As a result of Harvest's refusal to pay the bribe demand, the Venezuelan government again withheld approval, causing the Petroandina Deal to fall through.

24. On June 29, 2016, Harvest entered into a Share Purchase Agreement with CT Energy Holding SRL to sell its remaining Venezuelan assets. Exhibits A, A-5. The transaction was completed on October 7, 2016 for a total of $127,960,447.34 in cash, promissory notes, debt cancellation, and other assets. Exhibits A, A-6.

25. As a result of Ramirez's actions, Harvest suffered a loss of $472,039,552.66:

$$\$725{,}000{,}000 \text{ (initial all-cash offer for Pertamina deal)} - \$125{,}000{,}000 \text{ (successful first transaction in Petroandina Deal)} - \$127{,}960{,}447.34 \text{ (final sale to CT Energy)} = \text{Loss of } \$472{,}039{,}552.66$$

26. As shown by the equation above, Harvest's damages in the amount of $472,039,552.66 are a sum certain or a sum that can be made certain by computation in accordance with Rule 55(b)(1). Accordingly, Harvest requests that the Court enter an order directing the Clerk to enter judgment against Ramirez in the amount of $472,039,552.66.

27. Alternatively, should the Court determine that Harvest's damages are not a sum certain or a sum that can be made certain by computation, Harvest requests a hearing so that the proper amount of damages may be determined. Fed. R. Civ. P. 55(b)(2).

803758.2

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs Harvest Natural Resources, Inc. and HNR Energia B.V. respectfully request that this Court:

1. enter an order directing the Clerk to enter Defendant Rafael Dario Ramirez Carreno's default; and

2. enter an order directing the Clerk to enter a default judgment against Defendant Rafael Dario Ramirez Carreno in the amount of $472,039,552.66.

Dated: November 30, 2018　　　　　　　　　　Respectfully Submitted,

**SMYSER KAPLAN & VESELKA, L.L.P.**

By: */s/ Dane Ball*
Craig Smyser
*Attorney-in-Charge*
Fed. Bar No. 848
State Bar No. 18777575
Dane Ball
Federal Bar No. 784400
State Bar No. 24051642
Ty Doyle
Federal Bar No. 1373873
State Bar No. 24072075
Alexander M. Wolf
Federal Bar No. 2470631
State Bar No. 24095027
700 Louisiana, Suite 2300
Houston, Texas 77002
(713) 221-2300 (phone)
(713) 221-2320 (fax)
csmyser@skv.com
dball@skv.com
tydoyle@skv.com
awolf@skv.com

**ATTORNEYS FOR PLAINTIFFS HARVEST NATURAL RESOURCES, INC. AND HNR ENERGIA B.V.**

803758.2

**CERTIFICATE OF SERVICE**

      I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule 5.1 on November 30, 2018.  A copy of this document was also served on Defendant Rafael Dario Ramirez Carreno via certified mail, return receipt requested, per Local Rule 5.5 on November 30, 2018, at the following address:

16 E. 81st Street
New York, New York 10028

                                         */s/ Dane Ball*
                                         Dane Ball

803758.2