**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **HARVEST NATURAL RESOURCES, INC. and HNR ENERGIA B.V.,**<br><br>Plaintiffs,<br>v.<br>**JUAN JOSE GARCIA MENDOZA, PETRO CONSULTORES S.C., PETRO CONSULTORES INTERNATIONAL TRADING COMPANY, INC., PETROCONSULTORES (BARBADOS) LTD., PETROCONSULTORES, INC., SELLE LLC, AZURE 904 LLC, AZURE 406 LLC, RAFAEL DARIO RAMIREZ CARRENO, EULOGIO ANTONIO DEL PINO DIAZ, and JOSE ANGEL GONZALEZ ACOSTA,**<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION: 4:18-cv-00483 |

---

**DEFENDANT RAFAEL DARIO RAMIREZ CARRENO'S SEALED RESPONSE TO HARVEST'S SURREPLY**

---

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. THE DEFAULT JUDGMENT MUST BE SET ASIDE .......... 2

A. The Default Judgment Is Void for Insufficient Service of Process .......... 2

1. Plaintiffs' attempted service on the New York Address was not in good faith. .......... 2

2. Plaintiffs' claim that Ramirez withheld his whereabouts is baseless. .......... 4

3. Plaintiffs cannot avoid The Hague Convention's service requirements .......... 5

B. The Default Judgment Is Void for Lack of Personal Jurisdiction .......... 6

1. Personal jurisdiction cannot be established through a dismissed party. .......... 6

2. Ramirez lacks minimum contacts with the United States. .......... 8

3. Exercising jurisdiction over Ramirez would otherwise offend due process. .......... 9

C. Good Cause Warrants Setting Aside the Default Judgment .......... 9

III. PLAINTIFFS' CLAIMS MUST BE DISMISSED .......... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Batson v. Neal Spelce Assocs.*,
765 F.2d 511 (5th Cir. 1985) ....................10

*Bauers v. Bd of Regents of the Univ. of Wisc.*,
33 F. App'x 812 (7th Cir. 2002) ....................12

*Buffer v. Grupo Radio Centro, S.A.B. de C.V.*,
2011 WL 13238336 (W.D. Tex. Mar. 3, 2011) ....................6

*Chesapeake Bay Diving, Inc. v. Delta Demolition Grp., Inc.*,
2014 WL 7140322 (E.D. Va. Dec. 12, 2014) ....................12

*Compass Bank v. Kleve*,
2012 WL 12895414 (S.D. Tex. Dec. 10, 2012) ....................2, 4

*Conwill v. Greenberg Traurig, L.L.P.*,
2010 WL 2773239 (E.D. La. July 13, 2010) ....................2

*Matter of Dierschke*,
975 F.2d 181 (5th Cir. 1992) ....................11

*El-Hadad v. Embassy of United Arab Emirates*,
69 F. Supp. 2d 69 (D.D.C. 1999) ....................9

*Emberton v. Rutt*,
2008 WL 4093714 (D.N.M. Mar. 31, 2008) ....................8

*Erline Co S.A. v. Johnson*,
440 F.3d 648 (4th Cir. 2006) ....................12

*Falaiye v. CCA Academic Res., LLC*,
2017 WL 4098740 (D. Md. Sept. 14, 2017) ....................12

*In re FM Forrest, Inc.*,
587 B.R. 891 (Bankr. S.D. Tex. 2018) ....................11

*GC Serv. Ltd. P'ship v. Little*,
2019 WL 2647690 (S.D. Tex. June 27, 2019) ....................9

*Harvest Nat. Res., Inc. v. Garcia*,
2018 WL 2183968 (S.D. Tex. May 11, 2018) ....................8

*House v. Metal Transp. Sys., Inc.*,
2010 WL 1068058 (N.D. W. Va. Mar. 16, 2010) .......... 12

*Jenkins & Gilchrist v. Groia & Co.*,
542 F.3d 114 (5th Cir. 2008) .......... 11

*Joe Hand Promotions, Inc. v. Stateline Bar & Grill LLC*,
2019 WL 5095742 (D. Colo. Jul. 5, 2019) .......... 12

*Karlsson v. Rabinowitz*,
318 F.2d 666 (4th Cir. 1963) .......... 4

*In re Knight*,
208 F.3d 514 (5th Cir. 2000) .......... 12

*Kotsonis v. Superior Motor Exp.*,
539 F. Supp. 642 (M.D.N.C. 1982) .......... 8

*Kott v. Brachport Enter. Corp.*,
45 Cal. App. 4th 1126 (Cal. Ct. App. 1996) .......... 5, 6

*LG Capital Funding, LLC v. M Line Holdings, Inc.*,
2018 WL 3599731 (E.D.N.Y. July 27, 2018) .......... 12

*Maalouf v. Islamic Republic of Iran*,
923 F.3d 1095 (D.C. Cir. 2019) .......... 12

*Michigan Trust Co. v. Ferry*,
228 U.S. 346 (1913) .......... 7

*N.L.R.B. v. Clark*,
468 F.2d 459 (5th Cir. 1972) .......... 4, 5

*Nagravision SA v. Gotech Int'l Tech. Ltd.*,
882 F.3d 494 (5th Cir. 2018) .......... 6

*Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*,
515 F.2d 1200 (5th Cir. 1975) .......... 12

*Norris v. Causey*,
869 F.3d 360 (5th Cir. 2017) .......... 4, 12

*Nowell v. Nowell*,
384 F.2d 951 (5th Cir. 1967) .......... 4

*Ohio v. Roberts*,
448 U.S. 56 (1980) .......... 2

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
2012 WL 5471143 (N.D. Cal. Nov. 9, 2013) ....................................................................9, 10

*St. Paul Mercury Ins. Co. v. Lewis-Quinn Const.*,
2013 WL 4735468 (S.D. Tex. 2013) ..............................................................................8

*Stem v. Gomez*,
813 F.3d 205 (5th Cir. 2016) .........................................................................................8

*U.S. v. One Tract of Real Property*,
60 F. App'x 599 (6th Cir. 2003) ..................................................................................12

*U.S. v. Tellez*,
678 F. Supp. 2d 437 (W.D. Tex. 2009)....................................................................10, 11

*UC Acquisition Corp. v. Salem Nursing & Rehab Ctr. Of Tuskegee, Inc.*,
2012 WL 95422 (M.D. Ala. Jan. 12, 2012) ..................................................................12

*Walden v. Fiore*,
571 U.S. 227 (2014)........................................................................................................9

*Way v. Mueller Brass Co.*,
840 F.2d 303 (5th Cir. 1988) .........................................................................................2

*Westvaco Corp. v. Viva Magnetics Ltd.*,
2002 WL 1683454 (S.D.N.Y. July 24, 2002) ................................................................10

## I. INTRODUCTION

Plaintiffs misuse their surreply to confuse the record and mischaracterize the applicable legal standards. The relevant facts are simple. Plaintiffs attempted to serve Ramirez at the New York Address despite knowing unequivocally that he neither resided at that address nor maintained any connection to it. Plaintiffs claim they conducted an investigation to try to locate Ramirez, yet the only evidence they have to show for that "investigation" include a handful of articles—all of which suggest Ramirez left the United States and clearly confirm he terminated all ties to the Maduro regime (and, by extension, its embassy housing). Plaintiffs do not dispute that they never asked Ramirez for his address; instead, they claim that such a request would have been futile. But futility is not an excuse to ignore the basic rules of civil procedure. The rules require diligence and, in the event the defendant cannot be located following such diligence, it requires a plaintiff to seek leave from a court to serve by alternative means, such as through service at a last known address. Here, Plaintiffs did not follow those rules. Instead, Plaintiffs are trying to unilaterally amend the rules after the fact to justify their pre-service failures.

As for jurisdiction, Plaintiffs contort both the factual record and the law to cover up their obvious blunder of having dismissed all defendants other than Ramirez before obtaining a ruling on personal jurisdiction so they are unable to bootstrap Ramirez since his only contacts with the United States were in his capacity as a diplomat.

Under this record, the default judgment must be set aside and the complaint dismissed.

## II. THE DEFAULT JUDGMENT MUST BE SET ASIDE

### A. The Default Judgment Is Void for Insufficient Service of Process

Ramirez has not disputed that at some point a reporter informed him of this lawsuit. Opp.[1] Ex. 1 at 7-8. The reporter did not indicate how Ramirez was mentioned in the suit, just that it involved allegations of bribery at PDVSA. Even putting that aside, notice *alone* is insufficient. *Way v. Mueller Brass Co.*, 840 F.2d 303, 306 (5th Cir. 1988); *see also* Mot.[2] 10; Reply[3] 7. A plaintiff must still make a good-faith attempt to locate and properly serve a defendant. *Conwill v. Greenberg Traurig, L.L.P.*, 2010 WL 2773239, at *3 (E.D. La. July 13, 2010). Here, Plaintiffs did neither.

Plaintiffs claim that good faith "does not require the doing of a futile act," citing *Ohio v. Roberts*, 448 U.S. 56, 74 (1980). But *Ohio* has no bearing on this case, as it examines *criminal* law in the context of determining the unavailability of a witness for the Sixth Amendment. *Id.* Futility is not an excuse to ignore the basic rules of *civil* procedure in a civil proceeding. *See Compass Bank v. Kleve*, 2012 WL 12895414, at *3-4 (S.D. Tex. Dec. 10, 2012) (plaintiff required to affirmatively seek approval for alternative service if defendant resides abroad).

#### 1. Plaintiffs' attempted service on the New York Address was not in good faith.

Plaintiffs claim that their search for Ramirez's address was "reasonabl[e] and diligent[]" because they looked at a handful of public sources and retained an investigative firm who "found only one address for Ramirez: the New York Address." Surreply[4] 4-7. Tellingly, Plaintiffs do not

---

[1] Harvest's Sealed Response in Opp. to Ramirez's Motion, ECF 109 ("Opposition" or "Opp.").

[2] Defendant Rafael Dario Ramirez Carreno's Mot. to Set Aside Final Default J. and Mot. to Dismiss in Accordance with Rules 12(B)(2) and 12(B)(5), ECF 72 ("Motion" or "Mot.").

[3] Defendant Rafael Dario Ramirez Carreno's Reply in Support of Mot. to Set Aside Final Default J. and Mot. to Dismiss in Accordance with Rules 12(B)(2) and 12(B)(5), ECF 119 ("Reply").

[4] Harvest's Sealed Surreply in Opp. to Ramirez's Motion, ECF 122 ("Surreply.").

explain what, if any, investigation this firm actually did to locate Ramirez or whether the investigator even looked for Ramirez outside the United States. Despite this basic failure, Plaintiffs urge the Court, and Ramirez, to take Plaintiffs at their word that the investigative firm searched for Ramirez but found only the one address. *Id.* 6-7, 11. Given Plaintiffs' other past omissions,[5] such blind acceptance is entirely unwarranted.

Knowing that Ramirez had left the New York Address (and likely the United States) as of his resignation in December 2017, Plaintiffs had an obligation to do something more to try to locate him abroad. Had plaintiffs performed even a basic internet search, it would have taken no time to find [redacted][6] A purported investigative firm could have done even more. The fact that Ramirez was not publicly broadcasting his location given the ongoing threats against him did not absolve Plaintiffs from conducting even a basic search or otherwise complying with the rules of civil procedure. *See, e.g., Compass Bank*, 2012 WL 12895414, at *4 (requiring plaintiff to "exercise[] reasonable diligence in attempting to ascertain defendant['s]" location).

Plaintiffs also argue that their attempted service on the New York Address was in good faith based on Ramirez's "outward appearances," citing *Norris v. Causey*, 869 F.3d 360 (5th Cir.

[5] *See, e.g.* ECF 106, 110 (failure to inform the Court about the waiver provision); July 17, 2019 Tr., ECF 90 at 22:4-8, 22:10-12 (statements about what its investigative firm did and did not do). Plaintiffs assert that the claims they previously made about Ramirez purportedly hiding assets and moving around came from information compiled by a second investigative firm, retained "after" final judgment was entered, and thus not subject to discovery. Surreply 6. But Plaintiffs have repeatedly cited those findings in their discussions to this Court about service and jurisdiction. *See, e.g.*, July 17, 2019 Tr., ECF 90 at 22:4-8, 22:10-12. The Court ordered that all evidence relevant to service and jurisdiction be produced; tellingly, Plaintiffs produced nothing from any investigator.

[redacted]

2017). Surreply 10-11. But *Norris* merely holds that the plaintiff may rely on a "defendant's outward *representations* in concluding a residence is his usual place of abode." *Id.* 365 n.5 (emphasis added). No outward representation by Ramirez (e.g., that he had resigned, severed ties with Maduro, and left the United States) reasonably pointed to the New York Address at the time Plaintiffs attempted service, quite the opposite.

The fact that an embassy employee accepted service is of no moment. The case law cited by Plaintiffs indicates only that someone with a close nexus to the defendant—like a spouse or landlord at the defendant's *current* address—can accept service on a defendant's behalf. *See* Reply 5-6 (distinguishing *Nowell v. Nowell*, 384 F.2d 951, 953 (5th Cir. 1967); *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963)). The reason for this rule is simple: given a close nexus, there is an expectation that the defendant will receive notice of the service. Plaintiffs do not identify a single case that suggests that service on a domestic employee at a *former* official residence, who was never directly employed by the defendant and was paid by someone adverse to the defendant, is somehow sufficient for service purpose. The reason for that is also simple: there is no likelihood that such a person would take any steps to relay the attempted service and certainly no obligation that he or she would.

**2. Plaintiffs' claim that Ramirez withheld his whereabouts is baseless.**

Plaintiffs again cite the inapposite case, *N.L.R.B. v. Clark*, 468 F.2d 459 (5th Cir. 1972), for the proposition that service on a "defendant's former place of business" is proper where the defendant did not "modify[] public records to reflect the change." Surreply 8. But *Clark* is distinguishable. There, service was made on the former administrator of defendant's business, who the court found constituted defendant's "apparent agent" because defendant had not publicized that he had sold that business. *Clark*, 468 F.2d at 462. Here, in contrast, it was widely publicized that Ramirez resigned in December 2017 and left the country—put differently, by all

appearances he was *no longer* occupying his former diplomatic residence. It is absurd to suggest that, for purposes of service, Ramirez held an embassy employee paid by and affiliated with the Maduro regime out as an "apparent agent" after being *publicly* pushed to resign by that very regime.

### 3. Plaintiffs cannot avoid The Hague Convention's service requirements

Plaintiffs do not dispute that service through The Hague Convention (the "Convention") controls nor that, in order to permissibly serve a foreign defendant outside of the Convention, Plaintiffs were required to "exercise reasonable diligence." *See Kott v. Brachport Enter. Corp.,* 45 Cal. App. 4th 1126, 1138-39 (Cal. Ct. App. 1996). Instead, Plaintiffs argue that their diligence was sufficient, and that because they made a good faith attempt to serve Ramirez, there was no need to request leave for an alternative means of service. Surreply 13. But, as noted above, Plaintiffs neither exercised reasonable diligence nor was their service attempt in good faith.

Plaintiffs' attempt to distinguish the cases cited by Ramirez only serves to demonstrate that their purported pre-service investigation was fundamentally flawed. *See id*. 12-13. Plaintiffs claim that in these other cases "the plaintiff knew at the time of service the specific foreign country . . . where the defendant was living." *Id*. 12. Plaintiffs conveniently overlook the fact that they too could have known in what country Ramirez was living, but instead buried their heads in the sand. With any research, Plaintiffs would have known that Ramirez was living abroad, likely [REDACTED] *See supra* II.A.1.

Plaintiffs try to distinguish *Opella* and *Kott* on the grounds that, in those cases, the courts found that the plaintiffs' failure to obtain the defendants' address was "unreasonable" because the defendant was communicating with the plaintiff whereas Ramirez was not communicating with Plaintiffs. Surreply 12. But Plaintiffs did not even attempt to reach out to Ramirez until a few weeks *after* their attempted service (s*ee, e.g.,* Opp. Ex. 12). If Ramirez had refused to give his

location at that time, these would have been factors the Court could consider before ordering alternate service outside of the Convention.[7] This is not a question of futility, as Plaintiffs urge, it is proof of deficient service necessitating vacatur of the default.

**B. The Default Judgment Is Void for Lack of Personal Jurisdiction**

Contrary to Plaintiffs' strident assertion (Surreply 14), the question of "who bears the burden of proof in a Rule 60(b)(4) challenge to personal jurisdiction is one that has *not been answered* for this circuit." *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018). What the Fifth Circuit has confirmed, however, is that even in a default judgment setting, the initial burden of proof to establish personal jurisdiction over the defendant rests upon the plaintiff. *Id*. That initial burden has not been met here.

**1. Personal jurisdiction cannot be established through a dismissed party.**

Plaintiffs contort both the factual record and the law in an attempt to cover up their obvious mistake; namely that they dismissed the other defendants to this action in order to expedite a default judgment against Ramirez. As a preliminary matter, Plaintiffs dismissed Garcia before the Court could decide whether it had personal jurisdiction over Garcia, a question for which the answer was sufficiently unclear so that this Court ordered discovery. Reply 15 (citing Apr. 30, 2018 Hr'g Tr., ECF 51 at 26:2-4; ECF 48 at 5, 7). Seemingly realizing their procedural misstep, Plaintiffs now try to shift the burden on Ramirez to explain why the Court lacks personal jurisdiction over Garcia. Surreply 14. Plaintiffs have it backwards—the burden is on Plaintiffs to

[7] Plaintiffs cite *Buffer v. Grupo Radio Centro, S.A.B. de C.V.*, 2011 WL 13238336, at *3 (W.D. Tex. Mar. 3, 2011) in support of the proposition that mail to a defendant's last known address is sufficient. Surreply 13. But that case deals with a plaintiff that sought leave from a court, *before* attempting service, to effectuate it through alternative means. After a hearing, and upon a showing that service would reach the defendant, the court allowed service by mail to the defendant's last known address. Here, Plaintiffs never sought leave from the court before attempting service on Ramirez's last known address.

demonstrate they have jurisdiction over Garcia if they want to rely on that jurisdiction to bootstrap Ramirez.

In this vein, Plaintiffs also attack Ramirez for choosing not to appear at Garcia's deposition and claim that, when Ramirez finally appeared, "Harvest gave him Garcia's deposition transcript." Surreply 14. These are mischaracterizations and red herrings. There was no reason for Ramirez to appear at a deposition that he did not even know about in a case in which he had not even been properly served. And it is disingenuous for Plaintiffs to say they simply gave Ramirez the transcript—to the contrary, Plaintiffs repeatedly concealed statements made at that deposition and only turned over the transcript after they were ordered to do so by this Court. July 17, 2019 Hr'g Tr., ECF 90 at 31:12-21. Furthermore, it is simply false that "Garcia had the opportunity" but "failed" to credibly challenge his purported jurisdictional contacts. Surreply 14. The Court ordered briefing on that question but Plaintiffs *elected* to dismiss Garcia before such briefing could occur.

Plaintiffs also cite a string of cases to argue that personal jurisdiction is determined at the time the case is filed. However, none of the cases support the factual scenario Plaintiffs have created here. *Michigan Trust Co. v. Ferry*, 228 U.S. 346, 353 (1913) does not deal with nationwide service under a federal statute, let alone RICO. The case stands for the basic proposition that if personal jurisdiction is established at the commencement of the case, the court need not re-establish it with every subsequent order. *Id.* This forestalls the tactic of a litigant moving outside of the court's jurisdiction after jurisdiction first attaches.[8] Here, however, there is no initial finding

[8] *St. Paul Mercury Ins. Co. v. Lewis-Quinn Const.,* 2013 WL 4735468, at *5–6 (S.D. Tex. 2013) (Surreply 14-15) is inapposite, as that case pertained to subject-matter jurisdiction—not personal jurisdiction. Plaintiffs' reliance on *Emberton v. Rutt,* 2008 WL 4093714, at *9 (D.N.M. Mar. 31, 2008) and *Kotsonis v. Superior Motor Exp.,* 539 F. Supp. 642, 646 (M.D.N.C. 1982) (Surrpely 15) is similarly misplaced. The defendant in *Embertson* "consented and submitted to personal jurisdiction" and the defendant in *Kotsonis* made a "voluntary appearance" in the case and failed to otherwise oppose personal jurisdiction. *Emberton,* 2008 WL 4093714, at *9; *Kotsonis*, 539 F. Supp. at 644-645.

of personal jurisdiction over anyone, as the Court *never established jurisdiction over Garcia*. *See Harvest Nat. Res., Inc. v. Garcia*, 2018 WL 2183968 (S.D. Tex. May 11, 2018).

Plaintiffs' reliance on *Stem v. Gomez* (Surreply 15-16) is also misplaced, as that case dealt only with the subject matter jurisdiction of a Section 1983 claim. 813 F.3d 205, 210 (5th Cir. 2016). There, the court held that where a "challenge to jurisdiction is also a challenge to the existence of a federal cause of action," the "court should assume jurisdiction exists and 'deal with the objection as a direct attack on the merits of the plaintiff's case.'" *Id.* (quotation omitted). Here, Ramirez is not arguing that the non-existence of a cause of action is the basis for a "jurisdictional dismissal." Ramirez is arguing that the Court lacks personal jurisdiction over him, necessitating the vacatur of the default judgment and dismissal of the action. In this context, it is improper to determine jurisdiction through a dismissed party over whom the Court never previously obtained jurisdiction. Nationwide service of process does not, and should not, work that way.

**2. Ramirez lacks minimum contacts with the United States.**

Plaintiffs do not dispute that *all* of Ramirez's contacts with the United States occurred while he enjoyed diplomatic immunity. And Plaintiffs cite no case conferring jurisdiction over a foreign defendant based exclusively on such protected contacts—as is the case here. That is the end of the inquiry.

Plaintiffs claim that *El-Hadad v. Embassy of United Arab Emirates*, 69 F. Supp. 2d 69 (D.D.C. 1999)*, rev'd in part on other grounds, El-Hadad v. United Arab Emirates,* 216 F.3d 29 (D.C. Cir. 2000) is to the contrary. Surreply 17. That case is inapposite. There, the court sustained claims by an UAE embassy employee against the embassy itself because the embassy is physically located in the United States and *the wrongful conduct at issue occurred in the United States during*

*that time*. *El-Hadad* 69 F. Supp. 2d at 79. Here, in contrast, Ramirez is neither located in the United States nor did the alleged wrongful conduct occur while he was in the United States.

**3. Exercising jurisdiction over Ramirez would otherwise offend due process.**

Plaintiffs ignore the Supreme Court's holding that the relationship between the defendant, forum, and the litigation "must arise out of contacts that the defendant *himself* created with the forum State." *Walden v. Fiore*, 571 U.S. 227, 284 (2014) (quotations omitted). Instead, Plaintiffs continue to rely on the *De Leon* indictment (which does not name Ramirez) and their purported "well-pled allegations" (all too attenuated to rise to the type of purposeful contacts required by *Walden*). *See* Reply 19-20.

Plaintiffs claim "Ramirez has not adequately controverted Harvest's well-pleaded allegations, which are taken as true." Surreply 20. In fact, Ramirez has consistently and explicitly denied the allegation that Ramirez directed any bribes to Texas. Mot. 12-13; Reply 19-20. Nothing more is required at this stage. Plaintiffs' conclusory allegations to the contrary need not be credited. *See GC Serv. Ltd. P'ship v. Little,* 2019 WL 2647690, at *3 (S.D. Tex. June 27, 2019). For these reasons, Plaintiffs' reliance on *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.* is misplaced, as the court there held that "[w]here there are disputed allegations," as there are here, "facts … must be the touchstone." 2012 WL 5471143, at *9 (N.D. Cal. Nov. 9, 2013).[9]

**C. Good Cause Warrants Setting Aside the Default Judgment**

Ramirez's default was not willful. Ramirez does not dispute that he learned of the complaint from a journalist after it was filed, but he reasonably (and rightly) believed that he was never served in this case. *Westvaco Corp. v. Viva Magnetics Ltd.*, 2002 WL 1683454, at *2-3

[9] Whether or not Ramirez is a third-party beneficiary to a contract with a Delaware forum selection clause is irrelevant to the threshold question of whether Ramirez has minimum contacts with Texas for purposes of the due process analysis, as Ramirez argued. Reply 18-19, n. 18.

(S.D.N.Y. July 24, 2002) (finding that it was not willful even when defendant erroneously believed that service was improper and vacating a default on that basis); *U.S. v. Tellez*, 678 F. Supp. 2d 437, 441-42 (W.D. Tex. 2009).

Plaintiffs insist that actual notice renders the default willful. Surreply 1-2. But that is not what the case law says. For example, in *Tellez*, the court found that default was, at most, negligent, even though the plaintiff (the U.S. Government) argued that it "has shown beyond peradventure that Defendants' counsel was aware" of the defaulted action. *Tellez*, 678 F. Supp. 2d at 441, 442 (quotations omitted) (citing *Batson v. Neal Spelce Assocs.,* 765 F.2d 511, 514 (5th Cir. 1985) ("dismissal may be inappropriate … when a party's simple negligence is grounded in confusion")); *see also Westvaco Corp.*, 2002 WL 1683454, at *2. Notwithstanding Plaintiffs' repeated attempt to present as "facts" the notions that Ramirez is a nefarious individual, who is fluent in English, who has embraced the public spotlight during this lawsuit, has the ability to travel freely and is "simply playing games" (Surreply 1-3), *those are mere fictions*. In fact, English is not Ramirez's first language, he has limited ability to travel (both because he is a political target and because he did not believe he could or should test the validity of his passport), he is extremely private, and his communications with the press are mostly about the deteriorating situation in Venezuela (which makes sense since he is a political figure who deeply loves his country). That Ramirez often communicates with reporters about the situation in Venezuela or even, on occasion, about this case does not change his good-faith beliefs at the time of attempted service. In resolving all doubts in Ramirez's favor, his default is, at worst, negligent.

Plaintiffs are also wrong that a finding of willfulness somehow mandates the denial of Ramirez's motion to vacate the judgment. Indeed, the case Plaintiffs claim is controlling, *Matter*

*of Dierschke*, expressly allows for courts to consider *other* factors even upon a determination that a default was willful. 975 F.2d 181, 183-84 (5th Cir. 1992) (whether default was willful, whether setting aside the judgment would prejudice the plaintiff, and whether a meritorious defense is presented are disjunctive factors); *see also Tellez*, 678 F. Supp. 2d at 441.

Here, even if the Court found that Ramirez's default was willful, the Court can and should consider other factors, including that Plaintiffs would not be prejudiced merely by prosecuting this baseless action. Tellingly, Plaintiffs do not address Ramirez's argument that Plaintiffs' claimed prejudice is wholly of their own making. Mot. 13; Reply 23-24. As the Fifth Circuit held in *Jenkins & Gilchrist v. Groia & Co.*, 542 F.3d 114, 122 (5th Cir. 2008), a "defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." Ramirez stated in a substantive declaration that he was not involved in the bribes. Ramirez Decl., ECF 72-1 ¶ 18. If Ramirez proved this at trial, Plaintiffs' claims would indisputably fail.[10]

## III. PLAINTIFFS' CLAIMS MUST BE DISMISSED

In an effort to avoid Ramirez's motion to dismiss on waiver grounds, Plaintiffs fill several pages with a string of cases that deal with the late assertion of waivable affirmative defenses.[11]

[10] Unlike the cases cited by Plaintiffs, Ramirez's declaration is credible and supported by other evidence and thus should be considered. *Cf. In re FM Forrest, Inc.*, 587 B.R. 891, 920-21 (Bankr. S.D. Tex. 2018) (court rejected statement that sophisticated business man entered into oral agreement for multi-million-dollar construction project where plaintiff offered ample evidence that a dense written contract controlled).

[11] *See, e.g., Maalouf v. Islamic Republic of Iran,* 923 F.3d 1095, 1108–12 (D.C. Cir. 2019) (asserting statute of limitations defense in motion to vacate default judgment); *Erline Co S.A. v. Johnson,* 440 F.3d 648, 654–57 (4th Cir. 2006) (same); *Joe Hand Promotions, Inc. v. Stateline Bar & Grill LLC*, 2019 WL 5095742, at *4 (D. Colo. Jul. 5, 2019) (same); *UC Acquisition Corp. v. Salem Nursing & Rehab Ctr. Of Tuskegee, Inc.*, 2012 WL 95422, at *1 n.1 (M.D. Ala. Jan. 12, 2012) (same); *U.S. v. One Tract of Real Property,* 60 F. App'x 599, 600 (6th Cir. 2003) (same); *Falaiye v. CCA Academic Res., LLC*, 2017 WL 4098740, *4 (D. Md. Sept. 14, 2017) (statutory defense to FLSA and state labor law claim); *Chesapeake Bay Diving, Inc. v. Delta Demolition Grp., Inc.*, 2014 WL 7140322, at *4 (E.D. Va. Dec. 12, 2014) (statute of fraud defense); *House v. Metal Transp. Sys., Inc.*, 2010 WL 1068058, at *6-7 (N.D. W. Va. Mar. 16, 2010) (improper venue); *LG Capital Funding, LLC v. M Line Holdings, Inc.,* 2018 WL 3599731, at *8 (E.D.N.Y. July 27, 2018) (improper forum); *Norris,* 869 F.3d at 367–68 (statutory defense of real party of interest);

But, as Ramirez has already explained (Reply 25), Ramirez did not waive his argument on waiver by not raising it sooner, as the burden was on Plaintiffs—not Ramirez—to establish that there was a "sufficient basis in the pleadings for the judgment entered," which Plaintiffs failed to do. *See Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Plaintiffs admit that Nishimatsu stands for the "proposition that to secure a default judgment, a complaint's allegations must state a claim as required by Rule 8(a)(2)." Surreply 23. The point that appears to be lost on Plaintiffs is that, on its face, their complaint fails to do so as to Ramirez.

Dated: March 13, 2020

Respectfully submitted,

*/s/ Abbe David Lowell (by permission)*
Abbe David Lowell
WINSTON & STRAWN LLP
1700 K Street NW
Washington, DC 20006
Phone: 202-282-5875
Fax: 202-282-5100
adlowell@winston.com

Denise Scofield
Texas Bar No: 00784934
S.D. Tex. Bar No: 1529
WINSTON & STRAWN LLP
1111 Louisiana Street
Houston, TX 77002
Phone: 713-651-2600
Fax: 713-651-2700
dscofield@winston.com

---

*In re Knight,* 208 F.3d 514, 516-17 (5th Cir. 2000) (illegality of contract); *Bauers v. Bd of Regents of the Univ. of Wisc.,* 33 F. App'x 812, 817 (7th Cir. 2002) (discharge of bankruptcy).

Staci Yablon  
Sofia Arguello  
WINSTON & STRAWN LLP  
200 Park Avenue  
New York NY 10166  
Phone: 212-294-4703  
Fax: 212-294-4700  
syablon@winston.com  
sarguello@winston.com

**CERTIFICATE OF SERVICE**

I, Denise Scofield, hereby certify that on March 13, 2020, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

*/s/ Denise Scofield*
Denise Scofield