# EXHIBIT 25

MR. RAFAEL DARIO RAMIREZ CARRENO
16 E 81ST ST
NEW YORK, NY 10028-0201

9314 8699 0430 0054 4384 64

3.45

0.00

1.50

0.00

0.47

5.42

Dane Ball
700 Louisiana, Suite 2300
Houston, TX 77002

MR. RAFAEL DARIO RAMIREZ CARRENO
16 E 81ST ST
NEW YORK, NY 10028-0201

Dane Ball
700 Louisiana, Suite 2300
Houston, TX 77002

Dane Ball
700 Louisiana, Suite 2300
Houston, TX 77002



9314 8699 0430 0054 4384 64
RETURN RECEIPT (ELECTRONIC)

# Please Discard

HARVEST_RDR_000458

 **UNITED STATES POSTAL SERVICE**

January 7, 2019

Dear Francoise Bernier:

The following is in response to your request for proof of delivery on your item with the tracking number: **9314 8699 0430 0054 4384 64**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered, Left with Individual |
| **Status Date / Time:** | January 7, 2019, 2:52 pm |
| **Location:** | NEW YORK, NY 10028 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |

## Shipment Details

| | |
|---|---|
| **Weight:** | 1.0oz |

## Recipient Signature

Signature of Recipient:

Address of Recipient:

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

**HARVEST_RDR_000459**

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **HARVEST NATURAL RESOURCES, INC.**, and **HNR ENERGIA, B.V.**, | § | |
| | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **JUAN JOSÉ GARCIA MENDOZA, PETRO CONSULTORES, S.C., PETRO CONSULTORES INTERNATIONAL TRADING COMPANY, INC., PETROCONSULTORES (BARBADOS), LTD., PETROCONSULTORES, INC., AZURE 904, LLC, RAFAEL DARIO RAMIREZ CARRENO, EULOGIO ANTONIO DEL PINO DIAZ, and JOSE ANGEL GONZALEZ ACOSTA,** | § § § § § § § § § § § | Civil Action No. 4:18-cv-00483 |
| | § | |
| *Defendants*. | § | |
| | § | |

**DEFENDANTS' MOTION TO DISMISS**
**FOR LACK OF PERSONAL JURISDICTION**

HARVEST_RDR_000460

**TABLE OF CONTENTS**

I.      INTRODUCTION.................................................................................1

II.     JURISDICTIONAL FACTS...............................................................4

        A.      The FAC Alleges Two Transactions, Neither of Which has a
                Meaningful Connection to Texas.............................................6

                1.      The Pertamina Deal.......................................................6

                2.      The Petroandina Deal....................................................7

III.    LEGAL ANALYSIS ............................................................................8

        A.      Plaintiffs Bear the Burden to Establish Personal Jurisdiction over
                Garcia and the Garcia Corporate Defendants. .....................8

        B.      The Court Lacks Personal Jurisdiction over Garcia and the Garcia
                Corporate Defendants. ............................................................8

                1.      Neither Garcia nor any Garcia Corporate Defendant has Sufficient
                        Contacts with Texas to Support a Theory of General Jurisdiction.............9

                        a.      Garcia has No "Continuous and Systematic" Contacts with
                                Texas. .......................................................9

                        b.      The Garcia Corporate Defendants are Foreign Corporations
                                that Lack any Meaningful Contacts with Texas. ..........................11

                2.      There is No Viable Theory of Specific Jurisdiction over Garcia or the
                        Garcia Corporate Defendants. ................................................12

                        a.      The Case-Specific Connections between Garcia and Texas
                                are Random, Fortuitous, and Resulted Solely from the
                                Actions of Others. ..............................................13

                        b.      Garcia's Case-Related Connections with Texas are
                                Random, Fortuitous, and Attenuated. ...........................15

                        c.      Garcia Did Not Purposefully Establish any Contacts with
                                Texas. ........................................................16

                        d.      Garcia's Inconsequential Contacts with Texas are
                                Unrelated to Plaintiffs' Claims. ....................................17

                        e.      Asserting Specific Jurisdiction over Defendants Would Be
                                Patently Unfair. .................................................18

                        f.      Plaintiffs Fail to Allege a Plausible Theory of Specific
                                Jurisdiction Against the Garcia Corporate Defendants.................19

IV.     CONCLUSION ...............................................................................19

i

HARVEST_RDR_000461

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Access Telecom, Inc. v. MCI Telecomm. Corp.*,
   197 F.3d 694 (5th Cir. 1999) ................................................................11

*AllChem Performance Prods., Inc. v. Aqualine Warehouse, LLC*,
   878 F. Supp. 2d 779 (S.D. Tex. 2012) ..................................................13

*Best Little Promohouse in Tex. LLC v. Yankee Pennysaver, Inc.*,
   2014 WL 5431630 (N.D. Tex. Oct. 27, 2014) .....................................11

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985).............................................................9, 13, 16

*Cardinal Health Sol., Inc. v. St. Joseph Hosp. of Port Charlotte, Fla. Inc.*,
   314 Fed. Appx. 744 (5th Cir. 2009)......................................................17

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014).........................................................9, 10, 12

*Evergreen Media Holdings, LLC v. Safran Co.*,
   68 F. Supp. 3d 664 (S.D. Tex. 2014) ...............................................15, 16

*Freudensprung v. Offshore Tech. Serv., Inc.*,
   379 F.3d 327 (5th Cir. 2004) .............................................................16, 17

*Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*,
   255 F. App'x 775 (5th Cir. 2007) ..........................................................16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)...........................................................9, 12, 16

*Hanson v. Denckla*,
   357 U.S. 235 (1958).............................................................................16

*Holt Oil & Gas Corp. v. Harvey*,
   801 F.2d 773 (5th Cir. 1986) .................................................................16

*Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*,
   800 F.3d 143 (5th Cir. 2015) ........................................................ *passim*

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945).................................................................................9

*Johnston v. Multidata Sys. Int'l Corp.*,
   523 F.3d 602 (5th Cir. 2008) ...........................................................11, 12

HARVEST_RDR_000462

*Jones v. Petty-Ray Geophysical Geosource, Inc.*,
   954 F.2d 1061 (5th Cir. 1992) ................................................................10

*Lewis v. Fresne*,
   252 F.3d 352 (5th Cir. 2001) ............................................................8, 16

*Luv N' Care v. Insta-Mix, Inc.*,
   438 F.3d 465 (5th Cir. 2006) ............................................................9, 18

*McFadin v. Gerber*,
   587 F.3d 753 (5th Cir. 2009) ................................................................18

*Michiana Easy Livin' Country, Inc. v. Holten*,
   168 S.W.3d 777 (Tex. 2005) .................................................................16

*Mink v. AAAA Dev., LLC.*,
   190 F.3d 333 (5th Cir. 1999) .................................................................9

*Moncrief Oil Int'l, Inc. v. OAO Gazprom*,
   481 F.3d 309 (5th Cir. 2007) ................................................................17

*Monkton Ins. Servs., Ltd. v. Ritter*,
   768 F.3d 429 (5th Cir. 2014) ................................................................12

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
   253 F.3d 865 (5th Cir. 2001) ............................................................8, 15

*RCT Growth Partners, LLC v. Quad Ocean Grp. LLC*,
   2015 WL 286531 (S.D. Tex. Sept. 03, 2015) ..........................................3

*Rush v. Savchuk*,
   444 U.S. 320 (1980) .............................................................................15

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) ................................................................*passim*

*Wilson v. Belin*,
   20 F.3d 644 (5th Cir. 1994) .................................................................16

**Federal Rules**

Federal Rule of Civil Procedure 12(b)(2) ...................................2, 4, 8, 20

**Other Authorities**

Harvest Nat. Res., Inc., *Form 8-k*, U.S. S.E.C. (June 21, 2012)..................*passim*

Harvest Nat. Res., Inc., *Form 8-k*, U.S. S.E.C. (Dec. 16, 2013) ....................8

HARVEST_RDR_000463

# I.     **INTRODUCTION**

The Court should dismiss Defendant Juan José Garcia Mendoza ("Garcia") and the

Garcia Corporate Defendants[1] from this case pursuant to Federal Rule of Civil Procedure

12(b)(2) because they lack contacts with Texas sufficient to establish personal jurisdiction.

The only party with a supposed connection to Texas is Plaintiff Harvest Natural

Resources, Inc. ("Harvest"), which was a Delaware corporation that had an office in Houston,

Texas, prior to its formal dissolution in May 2017.  Even if Harvest's purported connections to

Texas were relevant to the jurisdictional analysis — which they are not — Harvest's

involvement in the allegations of the First Amended Complaint ("FAC") is remote.[2]

The FAC alleges that Harvest is the parent company of Plaintiff HNR Energia, B.V.

("HNR"), a Curacao company that conducts business in Venezuela.  HNR owns an interest in

Harvest-Vinccler Dutch Holding, B.V. ("H-V Dutch Holding"), a Dutch company doing

business in Venezuela.   H-V Dutch Holding held a 40% interest in Petrodelta, S.A.

("Petrodelta"), a Venezuelan State-owned company doing business in Venezuela.[3]  Diagram One

on the next page illustrates this relationship for clarity:

---

[1] The Garcia Corporate Defendants are (1) Azure 904, LLC; (2) Petroconsultores, Inc.; (3) Petroconsultores (Barbados), Ltd.; (4) Petro Consultores, S.C.; and (5) Petro Consultores International Trading Company, Inc. Plaintiffs amended their initial Complaint to sue two additional entities — Azure 406, LLC, and Selle, LLC — and claimed that Defendant Garcia "operated each of these entities as conduits for illegal activity . . . ."  First Am. Compl., ECF No. 14 at 3, ¶ 7.  After serving these entities, Plaintiffs immediately nonsuited them.  *See* Summons, ECF No.s 15, 19; Ret. Serv., ECF No.s 24–27; Vol. Dismissal, ECF No.s 29, 31.  Garcia has no relationship with these nonsuited entities, the undersigned do not represent them, and they are not movants in this Motion.

[2] Plaintiffs commenced this action on February 16, 2018.  Compl., ECF No. 1.  Plaintiffs filed their First-Amended Complaint on February 23, 2018.  First Am. Compl., ECF No. 14 (hereinafter, "FAC").  Garcia and the Garcia Corporate Defendants waived service of the Summons on February 28, 2018.  Waiver, ECF No. 20.

[3] Corporacion Venezolana del Petroleo ("CVP"), which is a corporate subsidiary of PDVSA, the Venezuelan national oil company, owned the other 60% of Petrodelta.  FAC at 5–6, ¶ 18.

HARVEST_RDR_000464

**DIAGRAM 1**



The FAC alleges that in June 2012 Juan Franciso Clerico ("Clerico"), a Venezuelan national and a director of H-V Dutch Holdings, and Garcia, also a Venezuelan national, had a conversation in Caracas, Venezuela, during which Garcia stated that a sum of money must be paid to the Venezuelan Oil Ministry before the Venezuelan government would approve H-V Dutch Holding's sale of its 40% stake in Petrodelta[4] to an Indonesian company.  In other words, this lawsuit involves an alleged conversation between two _Venezuelans_, in _Venezuela_, about _Venezuelan_ government approval of the sale of a private _Venezuelan_ company's interest in a _Venezuelan_ State company to an _Indonesian_ company.

Plaintiffs' jurisdictional theory consists of the conclusory and unsupported claim that Garcia "knew and intended" that his conversation with Clerico in Caracas eventually would be communicated — apparently from Clerico through a series of Venezuelan and Dutch

---

[4] Plaintiffs do not state that the Garcia Corporate Defendants played any specific role in the FAC's allegations.

HARVEST_RDR_000465

intermediaries[5] — to Harvest's office in Houston, Texas, and that the payment would "come from Harvest's bank accounts in the United States."  The alleged bribe was never paid.

Likewise, Plaintiffs claim that in "approximately fall 2014," another person allegedly told Harvest's CEO that Garcia — through an unspecified manner and means, and at an unspecified location — had demanded a second bribe in connection with a sale of H-V Dutch Holdings' Venezuelan assets to a Netherlands-based company.  Again, Plaintiffs make the conclusory and unsupported allegation that Garcia "demanded the bribe knowing that the demand would again be conveyed to Harvest in the United States."  This alleged bribe, too, was never paid.

Neither Garcia nor any of the Garcia Corporate Defendants has contacts with Texas sufficient to support a finding of general jurisdiction.  Likewise, Plaintiffs' unsupported allegation that Garcia "kn[ew] and intend[ed]" that a conversation in Venezuela, between Venezuelans, and about Venezuelan governmental approval of the sale of a Venezuelan company, would weave its way to Texas from Venezuela, through a series of corporations and individuals in Venezuela, Curacao, Amsterdam, and/or the Netherlands, does not support a theory of specific jurisdiction.

"Due Process requires that a defendant be haled [sic] into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State."  *RCT Growth Partners, LLC v. Quad Ocean Grp. LLC*, 2015 WL 286531, at *3 (S.D. Tex. Sept. 03, 2015) (quoting *Walden v.*

---

[5] As stated above, Harvest (a now defunct Delaware company that formerly had an office in Texas) is the parent company of the HNR (a Curacao company doing business in Venezuela), which was the investor in H-V Dutch Holding (a Netherlands company doing business in Venezuela).  FAC at ¶¶ 3, 4, 18.  Clerico (a Venezuelan national) is alleged to have been a director from the Vinccler side of H-V Dutch Holdings.  *Id.* at ¶ 25.  The FAC neither alleges nor explains how or why Garcia intended the conversation to be, or knew that the conversation would be, communicated to Texas.

HARVEST_RDR_000466

*Fiore*, 134 S. Ct. 1115, 1123 (2014)).  Therefore, pursuant to Rule 12(b)(2), the Court should dismiss all claims against Garcia and the Garcia Corporate Defendants with prejudice.

## II.   JURISDICTIONAL FACTS

1.     Plaintiff Harvest Natural Resources, Inc., is a Delaware corporation that Plaintiffs state "operated at all times with its principal place of business in Houston, Texas."  FAC at ¶¶ 3, 17.  However, according to the SEC filings that Plaintiffs cite in the FAC, *id*. at ¶ 19, "Harvest Natural Resources, Inc., headquartered in Houston, Texas, is an independent energy company with principal operations in Venezuela, exploration assets in Indonesia, West Africa, China and Oman and business development offices in Singapore and the United Kingdom."  Harvest Nat. Res., Inc., *Form 8-k, Exhibit 99.1: Harvest Natural Resources Announces Share Purchase Agreement to Sell Interests in Venezuela Form*, U.S. S.E.C. at 1 (June 21, 2012) (hereinafter, "Harvest Press Release").[6]  Harvest dissolved in May 2017, and now exists solely for the purposes of prosecuting lawsuits and closing its business.  FAC at ¶ 19.

2.     Plaintiff HNR Energia, B.V., is a Curacao company and wholly-owned subsidiary of Harvest.  *Id*. at ¶ 4.  According to the SEC filing cited in the FAC, *id*. at ¶ 19, HNR's principal place of business is the Netherlands.  Harvest Press Release at 1.  However, during the timeframe relevant to the FAC, HNR conducted business in Venezuela.  FAC at ¶¶ 18–19.

3.     Non-party Harvest-Vinccler Dutch Holding, B.V., is a Netherlands company with its principal place of business in the Netherlands.  Harvest Press Release at 1.  However, during the timeframe relevant to the FAC, H-V Dutch Holding conducted business in Venezuela.  FAC at ¶ 18.  HNR owns 80% of H-V Dutch Holding.  *Id*.

---

[6] Available at:
https://www.sec.gov/Archives/edgar/data/845289/000119312512278671/d370176dex991.htm

HARVEST_RDR_000467

4.      Non-party Petrodelta, S.A., is a Venezuelan company with its principal place of business in Venezuela.   FAC at ¶ 18.   H-V Dutch Holding owns 40% of Petrodelta.   *Id*. Corporacion Venezolana del Petroleo, a Venezuelan company that is a subsidiary of PDVSA (the Venezuelan national oil company), owns 60% of Petrodelta.  *Id*.

5.      Defendant Juan-José Mendoza Garcia is a citizen of Venezuela, who resides in Madrid, Spain.  Garcia Decl. at ¶ 1, attached as **Exhibit 1** and incorporated fully by reference. Garcia is not — and never has been — a U.S. Citizen.  *Id*. at ¶ 2.  He is legally permitted to visit the United States periodically pursuant to a visa and owns real estate in Florida through Azure 904, LLC.  *Id*. at ¶¶ 2, 13.  Garcia works as a consultant in the oil and gas industry for companies that do business in Venezuela.  *Id*. at ¶ 9.

6.      Defendant Petro Consultores, S.C. ("Petro, S.C."), is a Venezuelan company with its principal place of business in Venezuela.  Garcia Decl. at ¶ 9.  Petro, S.C., conducts oil and gas consulting for Venezuelan businesses.  *Id*.  Petro, S.C., does not have any Texas bank accounts, owns no property or assets in Texas, does not perform services for any Texas resident or entity, and never has conducted any business in Texas.  *Id*.

7.      Defendant Petroconsultores, Inc. ("Petro, Inc."), is an Anguilla British Virgin Islands company.  *Id*. at ¶ 10.  Petro, Inc., has no headquarters and has no present business operations of any kind.  *Id*.  The company has never had any assets, liabilities, or real property in the United States.  *Id*.  Petro, Inc., has no U.S. or Texas bank accounts whatsoever.  *Id*.  Nor has the company communicated with any Texas residents, registered to do business in Texas, or conducted business with any Texas entities.  *Id*.

8.      Defendant Petro Consultores International Trading Company, Inc. ("Petro International"), is a Panamanian company.  *Id*. at ¶ 11.  Petro International has no headquarters,

HARVEST_RDR_000468

and has never had any business operations of any kind.  FAC at ¶ 11.  The company never has
had any assets, liabilities, or bank accounts in the United States or elsewhere.  *Id.*

9.      Defendant Petro Consultores (Barbados), Ltd. ("Petro Barbados"), is a Barbados
company.  *Id.* at ¶ 12.  Petro Barbados has no headquarters, and never has conducted any
business of any kind in the United States or elsewhere.  *Id.*  The company never has had any
assets, liabilities, or bank accounts in the United States or elsewhere.  *Id.*

10.     Defendant Azure 904, LLC ("Azure 904") is a Florida limited liability company.
*Id.* at ¶ 13.  Azure 904 currently owns a condominium in Florida where Garcia's elderly mother
resides.  *Id.*  The company has never owned any property or other assets outside of Florida and
has no bank accounts in the United States or elsewhere.  *Id.*  The company has also never
conducted any business in Texas or with Texas residents, and is not registered to do business in
Texas.  *Id.* at ¶¶ 8, 13.

11.     None of Garcia Corporate Defendants maintains a place of business, registered
agent, bank account, license, or employees in Texas.  *Id.* at ¶ 8.  Nor has any entity ever owned
or leased real property in Texas.  *Id.*  No entity has registered to do business in Texas.  *Id.*
Plaintiffs have not alleged otherwise.  *See generally* FAC.

**A.    The FAC Alleges Two Transactions, Neither of Which has a Meaningful
        Connection to Texas.**

### *1.      The Pertamina Deal.*

12.     According to the FAC, in June 2012, HNR agreed to sell its Venezuelan holdings
(primarily consisting of its interest in H-V Dutch Holding) to Pertamina, an Indonesian State-
owned company.  FAC at ¶ 19.  Both the Venezuelan and Indonesian governments were required
to approve the Pertamina Deal before it could be consummated.  *Id.*

6

HARVEST_RDR_000469

13.    In November 2012, Garcia allegedly approached Clerico (a Venezuelan national and a director of H-V Dutch Holdings[7]) in Caracas, Venezuela, and stated that the Venezuelan government would approve the Pertamina Deal in exchange for a sum of money.  FAC at ¶ 25.

14.    In late November or early December 2012, Pertamina allegedly informed Harvest's CEO that Pertamina had received a similar demand from Garcia.  *Id*. at ¶ 27.  The FAC does not identify the location or other details of the supposed communication between Garcia and Pertamina.  Plaintiffs and Pertamina both allegedly declined to make any payments.  *Id*. at ¶¶ 26–27, 31–32.

15.    On February 20, 2013, Harvest announced the termination of the Pertamina Deal, apparently after the Indonesian government had communicated its rejection of the Pertamina Deal.  *See id.* at ¶ 33.

### 2.    *The Petroandina Deal.*

16.    In December 2013, HNR allegedly entered into an agreement to sell its Venezuelan holdings to Petroandina Resources Corporation, N.V. ("Petroandina Corp."), and its parent company, Pluspetrol Resources Corporation, B.V. ("Pluspetrol Corp.").  *Id*. at ¶¶ 36–37.  Both Petroandina and Pluspetrol are Netherlands companies.  Harvest Nat. Res., Inc., *Form 8-k*, U.S. S.E.C. at 1 (Dec. 16, 2013) (hereinafter, "Harvest 8-k").[8]  *See* FAC at ¶ 37.

---

[7] Plaintiffs claim that Clerico is a director of an entity called "Harvest-Vinccler, S.A."  FAC at ¶ 25.  The undersigned cannot find any company by this name.  The SEC filings cited in the FAC, *id*. at ¶ 19, reference an entity called "Harvest-Vinccler, S.C.A.," which it describes as a company organized under the laws of Venezuela.  Harvest Nat. Res., Inc., *Form 8-k, Exhibit 2.1: Share Purchase Agreement*, U.S. S.E.C. at 5 (June 21, 2012) (hereinafter, "Harvest Purchase Agreement").  The same document lists Clerico as a director of H-V Dutch Holdings.  *Id*. at 66.  Whether Clerico was a director of H-V Dutch Holdings (a Dutch company), Harvest-Vinccler, S.C.A. (a Venezuelan company), or both is irrelevant from a jurisdictional perspective, particularly in light of the fact that he is a Venezuelan national who had a conversation in Venezuela about Venezuelan government approval of the sale of an interest in a Venezuelan company.

[8] Available at: https://www.sec.gov/Archives/edgar/data/845289/000119312513480266/d645117d8k.htm

HARVEST_RDR_000470

17.     Non-party Javier Alfredo Iguacel, a Pluspetrol employee, allegedly informed Harvest's CEO in "approximately fall 2014" that Garcia demanded a bribe in order for the Venezuelan government to approve the Petroandina Deal.  *Id*. at ¶ 39.  Plaintiffs do not identify the date that this supposed demand occurred, where it occurred, or who was present.  The only purported connection to the *United States* (not *Texas*) is Plaintiffs' allegation that "Garcia demanded the bribe knowing that the demand would again be conveyed to Harvest in the United States."  *Id*.  No payment was made.  *Id.*

18.     On January 1, 2015, HNR terminated the Petroandina Deal.  *Id*. at ¶ 42.

### III.    LEGAL ANALYSIS

### A.    Plaintiffs Bear the Burden to Establish Personal Jurisdiction over Garcia and the Garcia Corporate Defendants.

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the resident plaintiff has the burden of establishing personal jurisdiction over the nonresident.  *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).  When evaluating a complaint under Rule 12(b)(2) a court must take uncontroverted allegations as true, but the court is not required to credit conclusory jurisdictional allegations.  *See, e.g.*, *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

### B.    The Court Lacks Personal Jurisdiction over Garcia and the Garcia Corporate Defendants.

"The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction *in personam* of a non-resident defendant unless the defendant has meaningful 'contacts, ties, or relations' with the forum state."  *Luv N' Care v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).  Personal jurisdiction may be established pursuant to a theory of general or specific jurisdiction.  *Mink v. AAAA Dev., LLC.*, 190 F.3d 333, 336 (5th Cir. 1999).  Under either

8

HARVEST_RDR_000471

analysis, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985) (citing *Int'l Shoe,* 326 U.S. at 316).

### 1.  Neither Garcia nor any Garcia Corporate Defendant has Sufficient Contacts with Texas to Support a Theory of General Jurisdiction.

In the FAC, Plaintiffs do not allege any sustained or meaningful contacts that would support a theory of general jurisdiction over Garcia or any of the Garcia Corporate Defendants. In fact, they allege only that (1) Garcia works as a consultant in the oil and gas industry for companies, "including U.S. and Texas-based companies," and (2) Garcia visited Houston from October 10, 2013, to October 20, 2013.  FAC at ¶¶ 7, 35.  These contacts fall far short of the "continuous and systematic" contacts required to sustain a theory of general jurisdiction.

### a.  Garcia has No "Continuous and Systematic" Contacts with Texas.

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923–25 (2011)).  Garcia is citizen of Venezuela and has resided in Venezuela for most of his adult life.  Garcia Decl. at ¶ 1. He now resides in Madrid, Spain.  *Id.*  He is not, has never been, nor has applied to be a U.S. Citizen or a Texas resident.  *Id.* at ¶¶ 2, 3.  He is legally permitted to visit the United States periodically pursuant to a visa.  *Id.* at ¶ 2.  Garcia currently owns one condominium in Florida where his elderly mother lives.  *Id.* at ¶ 13.  He owns no real property, bank accounts, or business interests in Texas.  *Id.* at ¶ 3.

Garcia has traveled to Texas (at most) only seven times in his entire life.  *Id.*  His first visit was during college when Garcia went to watch a baseball game in the Houston Astrodome with his father.  *Id.* at ¶ 4.  Since 2013, Garcia has traveled to Houston approximately three times

HARVEST_RDR_000472

to visit his daughter, who lives and works in the area.  *Id.* at ¶ 5.  Finally, Garcia attended two or three educational conferences in Houston — the last of which was around 2009.  *Id.* at ¶ 6.  Under the Supreme Court's "domicile" analysis, the "paradigm forum" for this dispute is Venezuela — not Texas.  *Daimler*, 134 S. Ct. at 760.

Garcia has never resided in Texas, and the other types of contacts that Plaintiffs must use to establish a case of general jurisdiction are nonexistent.  Garcia Decl. at ¶ 3.  For instance, Garcia never has owned, directly or indirectly, any property, bank accounts, or business interests in Texas.  *Id.*  Other than his approximately seven educational and personal visits to Texas, Garcia has never conducted any business related to the allegations in the FAC with any Texas businesses or residents.  *Id.* at ¶¶ 3, 8.  He has never been issued a Texas driver's license or registered to vote in Texas.  *Id.* at ¶ 3.  In short, Garcia's contacts with Texas are not "continuous and systematic," but rather isolated and immaterial.  *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992) ("[T]he minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state.").

Plaintiffs summarily allege that Garcia "works as a consultant in the oil and gas industry for companies, including U.S. and Texas-based companies . . . ."  FAC at ¶ 7.  To the contrary, Garcia has never conducted any business related to the allegations in the FAC with any Texas businesses or individuals.  Garcia Decl. at ¶ 3.  Garcia performs oil and gas consulting for Venezuelan businesses.  *Id.* at ¶ 9.  Garcia has not performed services for any Texas resident or entity, registered to do business in Texas, or conducted business with any Texas entities.  *Id.* at ¶¶ 3, 8, 9.

HARVEST_RDR_000473

But even if Garcia had such interactions, they could not be a basis to assert general jurisdiction. *Best Little Promohouse in Tex. LLC v. Yankee Pennysaver, Inc.*, 2014 WL 5431630, at *3 (N.D. Tex. Oct. 27, 2014) ("An out-of-state defendant that merely does business with Texas businesses or customers will not be subject to general jurisdiction if it does not have a lasting physical presence in the state.") (citing *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)). Moreover, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008).

In light of his minimal and inconsequential contacts with Texas, there is no basis for a theory of general jurisdiction over Garcia.

> **b.** The Garcia Corporate Defendants are Foreign Corporations that Lack any Meaningful Contacts with Texas.

There are no recognizable jurisdictional allegations of any kind against the Garcia Corporate Defendants. The FAC only references them once as the subjects of a conclusory allegation that "Garcia operates the [Garcia Corporate Defendants] as conduits for illegal activity, including that described herein." FAC at ¶ 7. They are never mentioned in the FAC again.

With the exception of the Florida LLC, Azure 904, the Garcia Corporate Defendants are non-U.S. entities. Garcia Decl. at ¶¶ 8–13. None maintain a place of business, ownership or lease of real property, registered agent, bank account, license, or employee in Texas. *Id.* at ¶ 8. None is registered to do business with Texas and/or has done any business with Texas. *Id.* In fact, Plaintiffs do not allege to the contrary except for Petro, S.C., which Plaintiffs claim in conclusory fashion, "conducts business in Houston, Texas." FAC at ¶ 5. This is incorrect. Garcia Decl. at ¶ 9. Moreover, "vague and overgeneralized assertions that give no indication as

11

HARVEST_RDR_000474

to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 610.

For a foreign corporation, general jurisdiction exists only if the corporation's "'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Daimler*, 134 S. Ct. at 761 (quoting *Goodyear*, 564 U.S. at 919). "It is therefore incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (citing *Goodyear*, 564 U.S. at 919).

Because the Garcia Corporate Defendants are foreign corporations with no connections to Texas, there is no basis to allege a theory of general jurisdiction over any of them.

> ### 2. There is No Viable Theory of Specific Jurisdiction over Garcia or the Garcia Corporate Defendants.

A four-step inquiry determines whether a court may exercise specific jurisdiction over a defendant. First, Plaintiffs must show that "there are sufficient (i.e., not random, fortuitous, or attenuated) pre-litigation connections between the nonresident defendant and the forum." *Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.,* 800 F.3d 143, 153 (5th Cir. 2015) (quotation marks and alterations omitted). Second, Plaintiffs must show that "the connection has been purposefully established by the defendant." *Id.* Third, Plaintiffs must show that "the plaintiffs' cause of action arises out of or is related to the defendant's forum contacts." *Id.* And fourth, if Plaintiffs can satisfy the first three elements, "the defendant can then defeat the exercise of specific jurisdiction by showing . . . that it would fail the fairness test, i.e., that the balance of interest factors show that the exercise of jurisdiction would be unreasonable." *Id.*

Plaintiffs have not, and cannot, satisfy its burden to demonstrate *any* of these elements for Garcia or any of the Garcia Corporate Defendants.

HARVEST_RDR_000475

    a.    <u>The Case-Specific Connections between Garcia and Texas are Random, Fortuitous, and Resulted Solely from the Actions of Others.</u>

For a defendant's connections with the forum to be sufficient for the exercise of specific jurisdiction, they cannot be random, fortuitous, or attenuated.  *See Burger King*, 471 U.S. at 475; s*ee also AllChem Performance Prods., Inc. v. Aqualine Warehouse, LLC*, 878 F. Supp. 2d 779, 787 (S.D. Tex. 2012).  Under this standard, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."  *Walden*, 134 S. Ct. at 1122–23 ("[P]laintiff cannot be the only link between the defendant and the forum."); *see AllChem Performance*, 878 F. Supp. 2d at 787 ("[S]pecific jurisdiction may not be based on the mere fortuity that a plaintiff is a Texas resident.").

Here, Plaintiffs allege that Garcia and Clerico — two Venezuelans — had a conversation in Caracas, Venezuela, about a supposed payment that would be required to receive Venezuelan government approval for H-V Dutch Holdings, a Netherlands company doing business in Venezuela, to sell its assets to Pertamina, an Indonesian company.  FAC at ¶¶ 19–25.  The only alleged connection between this conversation and Texas is the conclusory and unsupported allegation that Garcia "kn[ew] and intend[ed]" that the solicitation would be conveyed to Houston, Texas, and that any bribe, if paid, would come from Harvest's bank accounts "in the United States."  *Id*. at ¶ 25.[9]

In conclusory fashion and without any support, Plaintiffs state that Garcia had an alleged conversation with Clerico "knowing and intending" it would reach Texas.  *Id.* at ¶ 25.  The facts — even as Plaintiffs have pled them — however, do not support Plaintiffs' own theory.  First, Plaintiffs claim implausibly that Garcia knew and intended the supposed bribe to be conveyed

---

[9] Plaintiffs do not allege that the payment would come from a <u>Texas</u> bank account.  FAC at ¶ 25.  Indeed, no supposed bribe was paid from a bank account in Texas or elsewhere.  *Id.* at ¶¶ 26, 31, 41.

HARVEST_RDR_000476

from Clerico to H-V Dutch Holdings, from H-V Dutch Holdings to HNR, and from HNR to Harvest. This did not happen. To the contrary, Clerico allegedly contacted Harvest's CEO "and requested an immediate meeting in Miami," Florida, where the substance of the alleged bribe was communicated. *Id.* at ¶ 26. Thus, Plaintiffs do not even claim that Garcia's conversation with Clerico ***ever made its way to Texas***. Second, Plaintiffs not only allege that the payment would have come from a "United States" — not a *Texas* — bank account, but Plaintiffs also plead that no such bribe was actually paid from *any* bank account. FAC at ¶¶ 25, 26, 31, 41. Meaning, Plaintiffs have not pled that Garcia's alleged bribe demand even reached Texas.

Likewise, with regard to the Petroandina Deal, the only allegation is that Petroandina employee Iguacel informed Harvest's CEO in Houston that Iguacel had supposedly received a bribe demand from Garcia. *Id.* at ¶ 39. Other than alleging the demand occurred "[i]n approximately fall 2014," Plaintiffs do not explain when Garcia allegedly demanded the bribe, how the demand was conveyed, where the demand occurred, or any other details. *Id.* Again, Plaintiffs claim in conclusory fashion that Garcia "demanded the bribe knowing that the demand would again be conveyed to Harvest in the United States." *Id.* As with the allegations involving the Pertamina Deal, this allegation relies upon the unsupported and implausible premise that Garcia knew the supposed demand would be communicated from Iguacel, through Petroandina, to Pluspetrol, to HNR, to Harvest, to *somewhere* "in the United States" — alleging no *Texas* connection. *Id.* The Court need not credit conclusory allegations, particularly when they defy logic as they do here. *Panda Brandywine*, 253 F.3d at 869.

HARVEST_RDR_000477

b.    Garcia's Case-Related Connections with Texas are Random, Fortuitous, and Attenuated.

Plaintiffs must also show that "there are sufficient (i.e., not random, fortuitous, or attenuated) pre-litigation connections between the nonresident defendant and the forum." *Int'l Energy*, 800 F.3d at 153.

Notwithstanding the conclusory nature of what Garcia "kn[ew] and intend[ed]" about his alleged conversation with Clerico in Venezuela, the allegation fails to support a theory of specific jurisdiction because the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Walden*, 134 S. Ct. at 1122; *see Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("[H]owever significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'").   In addition to the fact that the supposed bribe was allegedly communicated to Harvest in *Florida*, not *Texas*, the communication resulted entirely due to unilateral actions of Clerico and others — not Garcia.  *See* FAC at ¶ 26.

Furthermore, even if Plaintiffs had alleged a direct communication between Garcia and Texas, which they have not, "[i]t is black letter law that communications between parties during contract negotiations, by themselves, are insufficient to support personal jurisdiction." *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 676 (S.D. Tex. 2014) (citations omitted).  Indeed, even "contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986); *see Freudensprung v. Offshore Tech. Serv., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004).

HARVEST_RDR_000478

Thus, Plaintiffs failed to meet their burden to establish the first prong of the specific jurisdiction test.

     c.     <u>Garcia Did Not Purposefully Establish any Contacts with Texas.</u>

Under the next prong of the specific jurisdiction test, Plaintiffs must show that Garcia's connection with Texas were purposefully established by him, rather than someone else. *Int'l Energy*, 800 F.3d at 153. It is not enough for a defendant to have foreseen being sued in Texas, the defendant must have "reasonably anticipate[d] being haled [sic] into court" there. *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 794 (5th Cir. 2007) (finding no basis for personal jurisdiction where defendants did not travel to or direct communications at Texas in connection with their business, even though the parties held a meeting in Michigan) (citations omitted). *Compare Wilson v. Belin*, 20 F.3d 644, 648–49 (5th Cir. 1994) (holding that communication into the forum state was not purposefully directed into the state), *with Lewis*, 252 F.3d at 359 (permitting the exercise of jurisdiction where defendant knowingly signed and sent contracts to plaintiff in Texas).

A defendant must have sought some benefit, advantage, or profit by "availing" himself of the jurisdiction. *Evergreen Media Holdings*, 68 F. Supp. 3d at 675 n.7 (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005)). As such, courts examine the "contacts that the 'defendant *himself* creates with the forum State[,]'" *Walden*, 134 S. Ct. at 1121–22 (quoting *Burger King*, 471 U.S. at 475), looking for "'some act by which the defendant purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws[,]'" *Goodyear*, 564 U.S. at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

The Fifth Circuit, furthermore, has held that "[a]n exchange of communications in the course of developing and carrying out a contract . . . does not, by itself, constitute the required

HARVEST_RDR_000479

purposeful availment of the benefits and protections of Texas law." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007). *See Cardinal Health Sol., Inc. v. St. Joseph Hosp. of Port Charlotte, Fla. Inc.*, 314 F. App'x. 744, 745 (5th Cir. 2009); *Freudensprung*, 379 F.3d at 344.

Here, Plaintiffs do not — and cannot — make allegations that Garcia purposefully availed himself of any privileges in Texas.  To the contrary, the FAC alleges the opposite.  Both attempted transactions involved conversations in Venezuela about Venezuelan government approval of the sale of a Venezuelan company.  There is no allegation that any Texas person or entity was a party to these conversations.  To the contrary, the only conceivable connection to Texas is that Clerico was a director of H-V Dutch Holding, which is owned in part by HNR, which is owned by Harvest, which once had an office in Texas.

Thus, Plaintiffs have failed to meet their burden of demonstrating that Garcia purposefully established contacts with Texas sufficient to meet the test for specific jurisdiction.

> d.    Garcia's Inconsequential Contacts with Texas are Unrelated to Plaintiffs' Claims.

Under the last prong of the specific jurisdiction test, Plaintiffs must demonstrate that their claims "arise[] out of or [are] related to the defendant's forum contacts." *Int'l Energy*, 800 F.3d at 153.  Garcia's sporadic and inconsequential connections to Texas — attending a ballgame, educational conferences, and/or visiting his daughter for a total of seven visits — have nothing to do with the claims at issue.  Garcia Decl. at ¶¶ 3–7.  Although Plaintiffs (correctly) contend that Garcia traveled to Houston from October 10–20, 2013, they do not attempt to connect this visit to their claims.  FAC at ¶ 35.  Nor could they, because this was a family visit.  Garcia Decl. at ¶ 5.

HARVEST_RDR_000480

Thus, Plaintiffs have failed to meet their burden to establish the final prong of the specific jurisdiction test.

e.   <u>Asserting Specific Jurisdiction over Defendants Would Be Patently Unfair.</u>

Plaintiffs cannot meet their burden to establish any of the first three prongs of the specific jurisdiction test, which makes any further analysis unnecessary.   But even if the Court were inclined to engage in a fairness analysis — the only prong for which Garcia carries the burden of proof — the abundant fairness considerations dictate dismissal of Garcia and the Garcia Corporate Defendants.

To determine if the exercise of jurisdiction is fair and reasonable, a court takes into account five factors: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies.  *McFadin v. Gerber*, 587 F.3d 753, 759–60 (5th Cir. 2009) (citing *Luv N' Care*, 438 F.3d at 473).  Here, these factors demonstrate how unfair and unreasonable it would be to assert specific jurisdiction over Garcia and the Garcia Corporate Defendants.

Garcia is a Venezuelan national.  Garcia Decl. at ¶ 1.  The Garcia Corporate Defendants have no connections to Texas.  *Id.* at ¶ 8.  Even the other three named Defendants (Ramirez, Del Pino, and Acosta) appear to be Venezuelan nationals.  *See* FAC at ¶¶ 8–10.  The individuals who received the purported bribe demands (Clerico and Iguacel) are also likely Venezuelan or Argentine nationals.  H-V Dutch Holding, which was trying to broker the sale of its interest in Petrodelta to an Indonesian company, is Dutch.  *Id.* at ¶ 18.  The oil ministers and government officials, who allegedly would receive the purported bribe, are Venezuelan.  *See id.* at ¶¶ 8–10. A dispute regarding H-V Dutch Holding's sale of interests in Petrodelta — the majority owner of

18

HARVEST_RDR_000481

which is a Venezuelan state-owned corporation — is best adjudicated by a Venezuelan court under Venezuelan law.

The only alleged witness who may reside in Texas is Harvest's former CEO. *See* FAC at ¶ 21. Harvest itself was a Delaware entity that dissolved in May of 2017 — it exists only as a litigation trust. *Id.* at ¶ 3. Texas' interests in resolving this dispute, therefore, are minimal. *See Walden*, 134 S.Ct. at 1121 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.").

If the Court dismisses Garcia and the Garcia Corporate Defendants — as it should — Plaintiffs are not without recourse. If Plaintiffs truly believe that they were harmed by Garcia or another Defendant, they may bring a case in Venezuela or some other jurisdiction with a meaningful connection to the underlying transactions.

> f.   <u>Plaintiffs Fail to Allege a Plausible Theory of Specific Jurisdiction Against the Garcia Corporate Defendants.</u>

Plaintiffs do not plead any case-specific conduct by any of the Garcia Corporate Defendants. Plaintiffs list the companies as parties, claim they are "conduits for illegal activity," and never mention them again. FAC at ¶¶ 5–7. The Garcia Corporate Defendants are entities with no connections to Texas or the claims of this lawsuit. Garcia Decl. at ¶¶ 8–13. As such, there is no viable theory of specific jurisdiction for any of them.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, Garcia and the Garcia Corporate Defendants respectfully request that this Court grant this Motion, dismiss all of Plaintiffs' claims against them pursuant to Federal Rule of Civil Procedure 12(b)(2) with prejudice, and grant any further legal or equitable relief that this Court deems just.

HARVEST_RDR_000482

Date:  April 13, 2018.

Respectfully submitted,

*s/ Paul E. Coggins*

**Paul E. Coggins**
 *Attorney-in-Charge*
 Federal ID No. 33190
 State Bar No. 04500700
 PCoggins@LockeLord.com

**Kip Mendrygal**
 Federal ID No. 1026277
 State Bar No. 24041472
 KMendrygal@LockeLord.com

**"Mario" Hoang Nguyen**
 Federal ID No. 3173111
 State Bar No. 24105873
 Mario.Nguyen@LockeLord.com

**LOCKE LORD, LLP.**
 2200 Ross Avenue, Suite 2800,
 Dallas, Texas 75201
 T: (214) 740-8000
 F: (214) 740-8800

**ATTORNEYS FOR DEFENDANTS JUAN-JOSÉ MENDOZA GARCIA; PETRO CONSULTORES, S.C.; PETRO CONSULTORES INTERNATIONAL TRADING COMPANY, INC.; PETROCONSULTORES (BARBADOS), LTD.; PETROCONSULTORES, INC.; and AZURE 904, LLC.**

## CERTIFICATE OF SERVICE

On April 13, 2018, I electronically submitted this Motion to Dismiss for Lack of Personal Jurisdiction with the Clerk of Court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the Court.  I certify that I have served all counsel and/or pro se parties of record electronically.

*s/ Kip Mendrygal*
Kip Mendrygal

20

HARVEST_RDR_000483

DEF.S' EXHIBIT NO. 1

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **HARVEST NATURAL RESOURCES, INC., and HNR ENERGIA, B.V.,** | § § § § | |
| *Plaintiffs,* | § § § | |
| **vs.** | § § | |
| **JUAN JOSÉ GARCIA MENDOZA, PETRO CONSULTORES, S.C., PETRO CONSULTORES INTERNATIONAL TRADING COMPANY, INC., PETROCONSULTORES (BARBADOS), LTD., PETROCONSULTORES, INC., AZURE 904, LLC, RAFAEL DARIO RAMIREZ CARRENO, EULOGIO ANTONIO DEL PINO DIAZ, and JOSE ANGEL GONZALEZ ACOSTA,** | § § § § § § § § § § § § § | Civil Action No. 4:18-cv-00483 |
| *Defendants.* | § § § | |

### DECLARATION OF MR. JUAN JOSÉ GARCIA MENDOZA IN SUPPORT OF
### DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

My name is Juan José Garcia Mendoza.  I am an adult male over 21 years of age, and am capable of making this Declaration.  I submit this Declaration in support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and state the following to the best of my personal knowledge:

1.      I am a citizen of Venezuela.  I have resided in Venezuela for most of my adult life.  Indeed, on or around April 5, 2018, I paid my taxes in Venezuela.  While I was a resident of Venezuela during the time period of the allegations in this case, I recently moved and established residency in Madrid, Spain.

2.      I am not — and never have been — a U.S. Citizen, nor have I ever applied for U.S. Citizenship.  At most, I periodically visit the United States on a visa.

### A.      My Seven Personal Visits to Texas.

3.      I have never been a resident of the State of Texas, nor have I ever intended to establish residency in Texas.  I have never knowingly owned — directly or indirectly — any real property, bank accounts, or business interests in Texas.  I have never been issued a Texas

*Garcia Decl.*
Page **1** of **4**

**DEF.S' EXHIBIT NO. 1**

driver's license and never registered to vote in Texas. Furthermore, I have never conducted any business related to the allegations in this Complaint with any Texas businesses or individuals. Over my lifetime, I have visited Texas approximately seven times as described below.

4.      When I was in college at San Michael College in Vermont, I took a trip with my father to watch a baseball game at the Houston Astrodome. This trip lasted approximately three days. Other than purchasing meals and other typical tourist activities, I conducted no business with the State of Texas or any Texas resident during these personal visits.

5.      I have traveled to Texas on three occasions for the sole purpose of visiting my daughter, who lives in Houston, Texas. My first visit was on or around October 10, 2013. I stayed with my daughter at her Houston apartment for approximately ten days, and then returned home to Venezuela. My second visit was around August 12, 2014. Again, I stayed with my daughter at her Houston apartment (a different apartment than my first visit) for approximately three days, and then returned home to Venezuela. My third visit was around September 4, 2015. Again, I stayed with my daughter at her Houston condominium for approximately three days, and then returned home to Venezuela. Other than purchasing meals at restaurants and other typical tourist activities, I conducted no business with the State of Texas or any Texas resident during these personal visits.

6.      Other than the three family visits described above, I have been to Texas two or three additional — but separate — times to attend educational conferences in Houston. The last time I attended a conference in Texas, was around 2009. On each trip, I visited for approximately three or four days, stayed at a Houston-area hotel, and attended the conference. I then returned home to Venezuela. Other than purchasing meals at restaurants and other typical tourist activities, I conducted no business with the State of Texas or any Texas resident during these conference visits.

7.      Not once during any of these personal or educational trips did I conduct business with, meet with, or even speak to any of the parties in this case.

### B.      My Corporate Entities.

8.      I own five corporate entities that are parties to this lawsuit. None of them do — or are registered to do — any business with Texas, directly or indirectly. Nor do any of them maintain a place of business, ownership or lease of real property, registered agent, bank account, license, or employee in Texas. Four of them are not even U.S. entities. Two of them are now defunct and never conducted any actual business at all. And one of them is a property holding company that exists solely to manage the Florida condominium where my elderly mother lives.

9.      I am the sole owner and employee of Petroconsultores, S.C. ("Petro, S.C."), which is a Venezuelan company headquartered in Venezuela with the sole business purpose of conducting oil and gas consulting for Venezuelan businesses. When working for Petro, S.C., I have not performed services for any Texas resident or entity, communicated with any Texas residents, registered to do business in Texas, or conducted business with any Texas entities. Petro, S.C., does not have a Texas bank account, own any real or personal property in Texas, or own any assets in Texas.

10.      I am the sole owner of Petroconsultores, Inc. ("Petro, Inc."), which is a Anguilla British Virgin Islands company. Petro, Inc., is a failed business venture of mine that never got

*Garcia Decl.*
Page **2** of 4

**HARVEST_RDR_000485**

**DEF.S' EXHIBIT NO. 1**

off the ground. Petro, Inc., has no headquarters and no present business operations of any kind. Petro, Inc., has no U.S. or Texas bank accounts whatsoever. In fact, Petro, Inc., has never owned any assets, liabilities, or property in any U.S. state or conducted any business in any U.S. state. Petro, Inc., especially, has not communicated with any Texas residents, is not registered to do business in Texas, and has not conducted business with any Texas entities.

11.     I am the majority owner of Petro Consultores International Trading Company, Inc. ("Petro International"), which is a Panamanian company. Petro International was another failed business venture of mine that never got off the ground. Petro International has no headquarters and never had any business operations of any kind. The company has never maintained any assets, liabilities, or bank accounts. Petro International, especially, has never owned any assets or property in the United States or conducted any business in the United States or with U.S. residents. Indeed, I have not paid the annual fees the Panamanian government requires to maintain the company in good standing and, thus, it may no longer exist.

12.     I am the majority owner of Petroconsultores (Barbados), Ltd. ("Petro Barbados"), which is a Barbados company. Petro Barbados was also a failed business venture of mine that never got off the ground. Petro Barbados has no headquarters and never had any business operations of any kind. The company has never maintained any assets, liabilities, or bank accounts. Petro Barbados, especially, has never owned any assets or property in the United States or conducted any business in the United States or with U.S. residents. Indeed, I have not paid the annual fees the Barbados government requires to maintain the company in good standing and, thus, it may no longer exist.

13.     I am the sole owner of Azure 904, LLC ("Azure 904"), a Florida limited liability company. Azure 904 currently owns the Florida condominium where my elderly mother lives. The company, however, has never owned any property or other assets outside of the State of Florida and has no bank accounts in the United States or elsewhere. Azure 904, in fact, has conducted no business aside from acquiring and maintaining real property in Florida. The company, especially, has never conducted any business in Texas or with any Texas residents.

### C.      *The Allegations in this Lawsuit.*

14.     To the best of my knowledge, I have never met or communicated with any employees, officers, or directors of Plaintiffs Harvest Natural Resources, Inc. ("Harvest"), or HNR Energia, B.V. ("HNR Energia"), related to any business matter alleged in their Complaint.

15.     On or around November of 2012, I was in Caracas, Venezuela, when Juan Francisco Clerico, a Venezuelan acquaintance who was a director of Harvest-Vinccler Dutch Holding, B.V. ("H-V Dutch Holding"), a Dutch company doing business in Venezuela, contacted me. Mr. Clerico asked me to consult with H-V Dutch Holding's efforts to purchase additional oil reserves from a Venezuelan oil field.

16.     All of my communications with Mr. Clerico occurred while we were in Venezuela. I never asked Mr. Clerico for a bribe nor communicated a bribe request from anyone else. I also never spoke to Harvest, HNR, or anyone associated with either company about business matters. Additionally, I never spoke to anyone in the United States about my conversations with Mr. Clerico, nor did I direct any communications of any kind to the United States. Again, all of our business communications occurred in Venezuela.

*Garcia Decl.*
Page **3** of **4**

HARVEST_RDR_000486

**DEF.S' EXHIBIT NO. 1**

17.    During all times, I knew and understood that Mr. Clerico was a Venezuelan national working on behalf of a Dutch company that conducted business in Venezuela. At no point did I have reason to believe — nor did Mr. Clerico tell me otherwise — that any business we conducted could have any effect in Texas. It is false to say that I "knew and intended that any conversation I had with Mr. Clerico would be conveyed to Harvest in Houston, Texas, and that any bribe, if paid, would necessarily come from Harvest's bank accounts in the United States."

18.    Finally, the consulting agreement with Mr. Clerico, if executed, would have been performed solely in Venezuela between Mr. Clerico's Dutch employer and myself.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 13th day of April, 2018.

_____
JUAN JOSÉ GARCIA MENDOZA

*Garcia Decl.*
Page 4 of 4

HARVEST_RDR_000487

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **HARVEST NATURAL RESOURCES, INC., and HNR ENERGIA, B.V.,** | § § § | |
| *Plaintiffs*, | § § § | |
| **vs.** | § § § | |
| **JUAN JOSÉ GARCIA MENDOZA, PETRO CONSULTORES, S.C., PETRO CONSULTORES INTERNATIONAL TRADING COMPANY, INC., PETROCONSULTORES (BARBADOS), LTD., PETROCONSULTORES, INC., AZURE 904, LLC, RAFAEL DARIO RAMIREZ CARRENO, EULOGIO ANTONIO DEL PINO DIAZ, and JOSE ANGEL GONZALEZ ACOSTA,** | § § § § § § § § § § § | Civil Action No. 4:18-cv-00483 |
| *Defendants*. | § § | |

## ORDER OF DISMISSAL

BEFORE THE COURT is a Motion to Dismiss for Want of Personal Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), filed by Defendant Juan José Garcia Mendoza ("Garcia") and Defendants Azure 904, LLC; Petroconsultores, Inc.; Petroconsultores (Barbados), Ltd.; Petro Consultores, S.C.; and Petro Consultores International Trading Company, Inc (collectively, the "Garcia Corporate Defendants"). Garcia and the Garcia Corporate Defendants request dismissal of all of claims against them in the above-captioned case with prejudice.

After considering the Record, the pleadings filed, Defendants' Motion to Dismiss, and Plaintiffs' Response, the Court finds that it does not have personal jurisdiction over Garcia or the

1

HARVEST_RDR_000488

Garcia Corporate Defendants.  As such, the Court **GRANTS** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction in all respects.  Therefore,

 **THE COURT ORDERS** that all of Plaintiffs' claims against Defendant Garcia and the Garcia Corporate Defendants in this case are **DISMISSED WITH PREJUDICE** and that this is a **FINAL JUDGMENT** as to all claims asserted against Defendant Garcia and the Garcia Corporate Defendants in this case.

 **SO ORDERED.**

 On April _____, 2018.


         _____
         **KEITH P. ELLISON**
         **UNITED STATES DISTRICT JUDGE**

HARVEST_RDR_000489

United States District Court
Southern District of Texas
**ENTERED**
July 10, 2018
David J. Bradley, Clerk

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **HARVEST NATURAL RESOURCES, INC., and HNR ENERGIA B.V.** | § § § | |
| *Plaintiffs* | § § | |
| v. | § | |
| **JUAN JOSÉ GARCIA MENDOZA, PETRO CONSULTORES, S.C., PETRO CONSULTORES INTERNATIONAL TRADING COMPANY, INC., PETROCONSULTORES (BARBADOS), LTD., PETROCONSULTORES, INC., AZURE 904, LLC, RAFAEL DARIO RAMIREZ CARRENO, EULOGIO ANTONIO DEL PINO DIAZ, AND JOSE ANGEL GONZALEZ ACOSTA,** | § § § § § § § § § § § § | **CIVIL ACTION: 4:18-cv-00483** |
| *Defendants.* | § | |

### ORDER

The Court has considered the Parties' Agreed Motion to Extend Briefing Deadlines for Garcia Defendants' Rule 12(b)(6) Motion (the "Motion").

The Court finds good cause to issue an order extending the Parties' briefing deadlines with respect to the Garcia Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim.

IT IS HEREBY AGREED AND ORDERED that Plaintiffs' deadline to respond to the Garcia Defendants' Rule 12(b)(6) motion to dismiss is extended to August 10, 2018, and the Garcia Defendants' deadline to file their reply to Plaintiffs' response is extended to August 17, 2018.

1

761665.1

**HARVEST_RDR_000490**

IT IS FURTHER AGREED AND ORDERED that, unless the Court deems oral argument unnecessary on the Garcia Defendants' Rule 12(b)(6) motion to dismiss, the Court shall hear oral arguments on the Garcia Defendants' Rule 12(b)(2) motion and their Rule 12(b)(6) motion on August 24, 2018.

**SO AGREED AND ORDERED.**

SIGNED on _____July 10_____, 2018, in Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge

761665.1

2

AGREED by and between on July 6, 2018

SMYSER KAPLAN & VESELKA, L.L.P.

By: /s/ Dane Ball _____
    Craig Smyser
    *Attorney-in-Charge*
    Fed. Bar No. 848
    State Bar No. 18777575
    Dane Ball
    Federal Bar No. 784400
    State Bar No. 24051642
    Ty Doyle
    Federal Bar No. 1373873
    State Bar No. 24072075
    Anthony J. Phillips
    Federal Bar No. 1123515
    State Bar No. 24094089
    Alexander M. Wolf
    Federal Bar No. 2470631
    State Bar No. 24095027
700 Louisiana, Suite 2300
Houston, Texas 77002
(713) 221-2300 (phone)
(713) 221-2320 (fax)
csmyser@skv.com
dball@skv.com
tydoyle@skv.com
aphillips@skv.com
awolf@skv.com

**ATTORNEYS FOR PLAINTIFFS
HARVEST NATURAL RESOURCES,
INC. AND HNR ENERGIA B.V.**

LOCKE LORD LLP

/s/ Mario Nguyen * _____
**Paul E. Coggins**
*Attorney-in-Charge*
Federal ID No. 33190
State Bar No. 04500700
PCoggins@LockeLord.com

**Kip Mendrygal**
Federal ID No. 1026277
State Bar No. 24041472
KMendrygal@LockeLord.com

**"Mario" Hoang Nguyen**
Federal ID No. 3173111
State Bar No. 24105873
Mario.Nguyen@LockeLord.com

LOCKE LORD, LLP.
2200 Ross Avenue, Suite 2800,
Dallas, Texas 75201
T: (214) 740-8000
F: (214) 740-8800

**ATTORNEYS FOR DEFENDANTS
JUAN-JOSÉ MENDOZA GARCIA;
PETRO CONSULTORES, S.C.; PETRO
CONSULTORES INTERNATIONAL
TRADING COMPANY, INC.;
PETROCONSULTORES (BARBADOS),
LTD.; PETROCONSULTORES, INC.; &
AZURE 904, LLC.**

*Signed by Permission*

3

761665.1

HARVEST_RDR_000492

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **HARVEST NATURAL RESOURCES, INC., and HNR ENERGIA B.V.** | § | |
| | § | |
| | § | |
| *Plaintiffs* | § | |
| v. | § | |
| **JUAN JOSÉ GARCIA MENDOZA,** | § | |
| **PETRO CONSULTORES, S.C., PETRO** | § | |
| **CONSULTORES INTERNATIONAL** | § | |
| **TRADING COMPANY, INC.,** | § | **CIVIL ACTION: 4:18-cv-00483** |
| **PETROCONSULTORES (BARBADOS),** | § | |
| **LTD., PETROCONSULTORES, INC.,** | § | |
| **AZURE 904, LLC, RAFAEL DARIO** | § | |
| **RAMIREZ CARRENO, EULOGIO** | § | |
| **ANTONIO DEL PINO DIAZ, and JOSE** | § | |
| **ANGEL GONZALEZ ACOSTA,** | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFFS' APPLICATION FOR ENTRY OF DEFAULT AGAINST DEFENDANT RAFAEL DARIO RAMIREZ CARRENO

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION:

Pursuant to Rule 55(a), Plaintiffs Harvest Natural Resources, Inc. and HNR Energia B.V. (collectively "Harvest") hereby request entry of a default against Defendant Rafael Dario Ramirez Carreno ("Ramirez") for failure to plead or otherwise defend the claims against him within the time prescribed under the Rules. Fed. R. Civ. P. 12(a)(1)(A)(i); 55(a).

In support of this Application for Entry of Default against Defendant Ramirez, Harvest relies upon its Original Petition [ECF No. 1], proof of service upon Ramirez [ECF No. 10], and the Affidavit of Alexander Wolf, herein attached as Exhibit A.

On February 16, 2018, Harvest filed its Original Complaint in the above-captioned proceeding against Ramirez and other defendants.

764927.2

**HARVEST_RDR_000493**

Service of Summons and Complaint on Ramirez was effected on February 16, 2018 [ECF No. 2].  Proof of service was filed with the Court on February 21, 2018 [ECF No. 10].

The time for Ramirez to file a responsive pleading expired on March 9, 2018.  Fed. R. Civ. P. 12(a)(1)(A)(i), ECF No. 10.   To date, Ramirez has not answered, responded, or otherwise defended the suit.

Accordingly, Harvest requests that the clerk enter default against Ramirez.  After default is entered, Harvest intends to move for default judgment pursuant to Rule 55 at the appropriate time.

DATED this 26th day of July, 2018.

764927.2

HARVEST_RDR_000494

Respectfully Submitted,

**SMYSER KAPLAN & VESELKA, L.L.P.**

By:  _/s/ Dane Ball_____
Craig Smyser
*Attorney-in-Charge*
Fed. Bar No. 848
State Bar No. 18777575
Dane Ball
Federal Bar No. 784400
State Bar No. 24051642
Ty Doyle
Federal Bar No. 1373873
State Bar No. 24072075
Anthony J. Phillips
Federal Bar No. 1123515
State Bar No. 24094089
Alexander M. Wolf
Federal Bar No. 2470631
State Bar No. 24095027
700 Louisiana, Suite 2300
Houston, Texas 77002
(713) 221-2300 (phone)
(713) 221-2320 (fax)
csmyser@skv.com
dball@skv.com
tydoyle@skv.com
aphillips@skv.com
awolf@skv.com

**ATTORNEYS FOR PLAINTIFFS**
**HARVEST NATURAL RESOURCES, INC.**
**AND HNR ENERGIA B.V.**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule 5.1 on the 26th day of July, 2018.

_/s/ Dane Ball_____
Dane Ball

HARVEST_RDR_000495

# Exhibit A

HARVEST_RDR_000496

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **HARVEST NATURAL RESOURCES, INC., and HNR ENERGIA B.V.** | § § § | |
| *Plaintiffs* | § § | |
| v. | § | |
| **JUAN JOSÉ GARCIA MENDOZA, PETRO CONSULTORES, S.C., PETRO CONSULTORES INTERNATIONAL TRADING COMPANY, INC., PETROCONSULTORES (BARBADOS), LTD., PETROCONSULTORES, INC., AZURE 904, LLC, RAFAEL DARIO RAMIREZ CARRENO, EULOGIO ANTONIO DEL PINO DIAZ, and JOSE ANGEL GONZALEZ ACOSTA,** | § § § § § § § § § § § | **CIVIL ACTION: 4:18-cv-00483** |
| *Defendants.* | § § | |

### AFFIDAVIT OF ALEXANDER M. WOLF

BEFORE ME, the undersigned authority, on this day personally appeared ALEXANDER M. WOLF, who is personally known to me and being first duly sworn by me, testified upon oath as follows:

1.    My name is Alexander M. Wolf. I am over the age of 18, of sound mind, and competent and legally capable of making this affidavit. The facts stated herein are true and correct and of my own personal knowledge. I am a counsel of record for Plaintiffs Harvest Natural Resources, Inc. and HNR Energia B.V. (collectively "Harvest").

2.    Service of Summons and Complaint on Defendant Rafael Dario Ramirez Carreno ("Ramirez") was effected in accordance with Federal Rule of Procedure 4(e) on February 16, 2018 by leaving a copy of the Complaint and Summons at Ramirez's dwelling or usual place of abode with Alexandra Leonardo, a domestic employee who also resided at the residence. Proof of service was filed with the Court on February 21, 2018 [ECF No. 10].

3.    After effecting service, counsel for Harvest took steps to ensure that Ramirez had actual notice of this lawsuit, including attempting contact by phone, text message, and WhatsApp at numbers for Ramirez that Harvest's counsel located. The lawsuit was also widely reported on by the media.

764927.2

**HARVEST_RDR_000497**

4.   Ramirez's comments to the media on the day the lawsuit was filed strongly indicate that
     he had actual notice of this lawsuit.  On February 20, 2018, an Associated Press article
     regarding Harvest's lawsuit stated: "Ramirez, contacted Friday [February 16] by AP,
     *declined to comment on the suit* but *reiterated that he never asked for bribes* or played a
     role in the selection of PDVSA's business partners."  *See* Joshua Goodman, "Houston
     firm sues ex Venezuelan oil czar Ramirez over bribes," *Chicago Tribune* (Feb. 20, 2018),
     available at http://www.chicagotribune.com/business/sns-bc-lt--venezuela-oil-corruption-
     20180216-story.html (emphasis added).

5.   As of the date of this affidavit, Ramirez has not answered, responded, or otherwise
     appeared in this case.

     FURTHER AFFIANT SAYETH NOT.

     _____
     ALEXANDER M. WOLF

GIVEN UNDER MY HAND AND SEAL OF OFFICE and SWORN AND SUBSCRIBED
BEFORE ME on this the _26th_ day of _July_____, 2018.

```
FRANCOISE BERNIER
Notary Public, State of Texas
Comm. Expires 12-17-2016
Notary ID 125820735
```

_____
Notary Public in and for the
State of Texas

Printed name and commission expiration
date (or seal stating the same information)

HARVEST_RDR_000498

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **HARVEST NATURAL RESOURCES,** | § | |
| **INC., and HNR ENERGIA B.V.** | § | |
| | § | |
| *Plaintiffs* | § | |
| v. | § | CIVIL ACTION: 4:18-cv-00483 |
| **JUAN JOSE GARCIA MENDOZA,** *et al.* | § | |
| | § | |
| *Defendants.* | § | |

**<u>AGREED MOTION FOR EXTENSION</u>**

Plaintiffs Harvest Natural Resources, Inc., and HNR Energia, B.V. (collectively, "Plaintiffs") and Defendants Juan José Garcia Mendoza; Azure 904, LLC; Petroconsultores, Inc.; Petroconsultores (Barbados), Ltd.; Petro Consultores, S.C.; and Petro Consultores International Trading Company, Inc. (collectively, the "Garcia Defendants") (together, the "Parties") jointly file this Agreed Motion for Extension of all current deadlines and hearings.

The Parties are mutually evaluating their factual and legal positions in this case. To avoid burdening the Court and Parties with further briefing and hearings as the Parties conduct their evaluations and confer, the Parties respectfully request that the Court extend all current deadlines in the case by 90 days and continue the upcoming Hearing scheduled for August 24, 2018, accordingly.

[Signature Page Follows]

767876.2

**HARVEST_RDR_000499**

**SO AGREED AND ORDERED.**

SIGNED on _____  ____, 2018, in Houston, Texas.


_____
Lee H. Rosenthal
Chief United States District Judge


AGREED by and between on July 31, 2018:


*s/ Dane Ball*
_____
Craig Smyser (Fed. Bar No. 848)
*Attorney-in-Charge*
Dane Ball (Fed. Bar No. 784400)
Ty Doyle (Fed. Bar No. 1373873)
Anthony J. Phillips (Fed. Bar No.
1123515)
Alexander M. Wolf (Fed. Bar No.
2470631)
700 Louisiana, Suite 2300
Houston, Texas 77002
(713) 221-2300 (phone)
(713) 221-2320 (fax)
csmyser@skv.com
dball@skv.com
tydoyle@skv.com
aphillips@skv.com
awolf@skv.com

**ATTORNEYS FOR PLAINTIFFS
HARVEST NATURAL
RESOURCES, INC., & HNR
ENERGIA, B.V.**

*s/ Paul E. Coggins*
_____
**Paul E. Coggins**
  *Attorney-in-Charge*
  Federal ID No. 33190
  State Bar No. 04500700
  PCoggins@LockeLord.com

**Kip Mendrygal**
  Federal ID No. 1026277
  State Bar No. 24041472
  KMendrygal@LockeLord.com

**"Mario" Hoang Nguyen**
  Federal ID No. 3173111
  State Bar No. 24105873
  Mario.Nguyen@LockeLord.com

**LOCKE LORD, LLP.**
  2200 Ross Avenue, Suite 2800,
  Dallas, Texas 75201
  T: (214) 740-8000
  F: (214) 740-8800

**ATTORNEYS FOR DEFENDANTS JUAN-
JOSÉ GARCIA MENDOZA; PETRO
CONSULTORES, S.C.; PETRO
CONSULTORES INTERNATIONAL
TRADING COMPANY, INC.;
PETROCONSULTORES (BARBADOS),
LTD.; PETROCONSULTORES, INC.; &
AZURE 904, LLC.**

767876.2

**HARVEST_RDR_000500**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **HARVEST NATURAL RESOURCES,** | § | |
| **INC., and HNR ENERGIA B.V.** | § | |
| | § | |
| *Plaintiffs* | § | |
| v. | § | CIVIL ACTION: 4:18-cv-00483 |
| **JUAN JOSE GARCIA MENDOZA,** *et al.* | § | |
| | § | |
| *Defendants.* | § | |

## <u>ORDER</u>

The Court has considered the Parties' Agreed Motion for Extension.  The Court finds good cause to issue an order extending all current deadlines by 90 days and continue the upcoming Hearing in this matter accordingly.

IT IS HEREBY AGREED AND ORDERED that all current deadlines in this matter are extended by 90 days.  IT IS FURTHER ORDERED that the Hearing on the Garcia Defendants' Motions to Dismiss, presently scheduled for August 24, 2018, is reset for _____ _____, 2018, at __:__ _M.

**SO AGREED AND ORDERED.**

SIGNED on _____ _____, 2018, in Houston, Texas.


_____
Lee H. Rosenthal
Chief United States District Judge

HARVEST_RDR_000501

United States District Court
Southern District of Texas
**ENTERED**
August 02, 2018
David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| HARVEST NATURAL RESOURCES, INC., | § | |
| *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-483 |
| | § | |
| JUAN JOSE MENDOZA GARCIA, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

The parties' agreed motion for extension, (Docket Entry No. 60), is granted.  Harvest must

respond to the defendants' motion to dismiss by **November 9, 2018**; the defendants must reply by

**November 16, 2018**; and oral argument will be held on **November 30, 2018**, at **1:00 p.m.** in

Courtroom 11-B.  The initial disclosures and the joint discovery/case management plan must be filed

by **December 14, 2018**.

SIGNED on August 2, 2018, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge

HARVEST_RDR_000502

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

Harvest Natural Resources, Inc., et al.

v.                                                    Case Number: 4:18−cv−00483

Juan Jose Mendoza Garcia, et al.

---

## NOTICE OF RESETTING

**TAKE NOTICE THAT A PROCEEDING IN THIS CASE HAS BEEN RESET FOR THE PLACE, DATE AND TIME SET FORTH BELOW.**

**Before the Honorable**

Lee H Rosenthal

**PLACE:**
Courtroom 11B
United States District Court
515 Rusk Ave
Houston, TX

**DATE:** 11/28/2018

**TIME:** 03:00 PM

**TYPE OF PROCEEDING:** Motion Hearing

Date:   October 25, 2018

David J. Bradley, Clerk

HARVEST_RDR_000503

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **HARVEST NATURAL RESOURCES, INC., and HNR ENERGIA B.V.** | § § § | |
| *Plaintiffs* | § | |
| v. | § | |
| **JUAN JOSÉ GARCIA MENDOZA, PETRO CONSULTORES, S.C., PETRO CONSULTORES INTERNATIONAL TRADING COMPANY, INC., PETROCONSULTORES (BARBADOS), LTD., PETROCONSULTORES, INC., AZURE 904, LLC, RAFAEL DARIO RAMIREZ CARRENO, EULOGIO ANTONIO DEL PINO DIAZ, and JOSE ANGEL GONZALEZ ACOSTA,** | § § § § § § § § § § § | **CIVIL ACTION: 4:18-cv-00483** |
| *Defendants.* | § | |

### PLAINTIFFS' NOTICE OF VOLUNTARY DISMISSAL OF GARCIA DEFENDANTS, DEFENDANT DEL PINO DIAZ AND DEFENDANT GONZALEZ ACOSTA

Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), Plaintiffs Harvest Natural Resources, Inc. and HNR Energia B.V., hereby give notice that the defendants below are voluntarily dismissed without prejudice.

- Juan Jose Garcia Mendoza;
- Petro Consultores, S.C.;
- Petro Consultores International Trading Company, Inc.;
- Petroconsultores (Barbados), Ltd.;
- Petroconsultores, Inc.;
- Azure 904, LLC;
- Eulogio Antonio Del Pino Diaz; and
- Jose Angel Gonzalez Acosta.[1]

---

[1] Thus, this notice of voluntary dismissal applies to all current defendants except Defendant Rafael Dario Ramirez Carreno, who Plaintiffs served but has failed to plead or otherwise defend the claims brought against him. As such, Plaintiffs intend to later seek a default judgment against Defendant Ramirez Carreno.

**HARVEST_RDR_000504**

As of the date of the filing of this Notice of Voluntary Dismissal, no Defendant listed above has filed an answer or a motion for summary judgment.

Respectfully Submitted,

SMYSER KAPLAN & VESELKA, L.L.P.

By:   _/s/ Dane Ball_____
Craig Smyser
*Attorney-in-Charge*
Fed. Bar No. 848
State Bar No. 18777575
Dane Ball
Federal Bar No. 784400
State Bar No. 24051642
Alexander M. Wolf
Federal Bar No. 2470631
State Bar No. 24095027
700 Louisiana, Suite 2300
Houston, Texas 77002
(713) 221-2300 (phone)
(713) 221-2320 (fax)
csmyser@skv.com
dball@skv.com
awolf@skv.com

**ATTORNEYS FOR PLAINTIFFS
HARVEST NATURAL RESOURCES, INC.
AND HNR ENERGIA B.V.**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule 5.1 on the 29th day of October, 2018.

_/s/ Dane Ball_____
Dane Ball

764913.1

**HARVEST_RDR_000505**

United States District Court
Southern District of Texas

**ENTERED**

November 13, 2018

David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **HARVEST NATURAL RESOURCES, INC., and HNR ENERGIA B.V.** | § | |
| | § | |
| | § | |
| *Plaintiffs* | § | |
| **v.** | § | |
| **JUAN JOSÉ GARCIA MENDOZA, PETRO CONSULTORES, S.C., PETRO CONSULTORES INTERNATIONAL TRADING COMPANY, INC., PETROCONSULTORES (BARBADOS), LTD., PETROCONSULTORES, INC., AZURE 904, LLC, RAFAEL DARIO RAMIREZ CARRENO, EULOGIO ANTONIO DEL PINO DIAZ, and JOSE ANGEL GONZALEZ ACOSTA,** | § § § § § § § § § § § | **CIVIL ACTION: 4:18-cv-00483** |
| *Defendants.* | § | |

**ORDER**

The Court has considered Plaintiffs Harvest Natural Resources, Inc. and HNR Energia B.V.'s Notice of Voluntary Dismissal [ECF No. 63], filed pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). The notice is granted.

IT IS HEREBY ORDERED that Defendants Juan Jose Garcia Mendoza, Petro Consultores, S.C., Petro Consultores International Trading Company, Inc., Petroconsultores (Barbados), Ltd., Petroconsultores, Inc., Azure 904, LLC, Eulogio Antonio Del Pino Diaz, and Jose Angel Gonzalez Acosta are hereby dismissed without prejudice.

SIGNED on November 13, 2018, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge

806855.1

**HARVEST_RDR_000506**

United States District Court
Southern District of Texas

**ENTERED**

December 20, 2018

David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **HARVEST NATURAL RESOURCES, INC., and HNR ENERGIA B.V.** | § | |
| | § | |
| | § | |
| *Plaintiffs* | § | |
| v. | § | |
| **JUAN JOSÉ GARCIA MENDOZA, PETRO CONSULTORES, S.C., PETRO CONSULTORES INTERNATIONAL TRADING COMPANY, INC., PETROCONSULTORES (BARBADOS), LTD., PETROCONSULTORES, INC., AZURE 904, LLC, RAFAEL DARIO RAMIREZ CARRENO, EULOGIO ANTONIO DEL PINO DIAZ, and JOSE ANGEL GONZALEZ ACOSTA,** | § § § § § § § § § § § § | **CIVIL ACTION: 4:18-cv-00483** |
| *Defendants.* | § | |

**ORDER**

The Court has considered Plaintiffs Harvest Natural Resources, Inc. and HNR Energia B.V.'s Motion for Default Judgment against Defendant Rafael Dario Ramirez Carreno and supporting affidavit.

The Court finds that Defendant Ramirez was properly served in accordance with Federal Rule of Civil Procedure 4(e), and that he failed to answer, respond, or otherwise defend the claims brought against him within the time period prescribed by Federal Rule of Civil Procedure 12(a)(1)(A)(i).

The Court also finds that the damages sought by Plaintiffs in the amount of $472,039,552.66 is a sum certain or a sum that can be made certain by computation in accordance with Federal Rule of Civil Procedure 55(b)(1).  Accordingly, Plaintiffs' motion is granted.

810654.1

IT IS HEREBY ORDERED that the Clerk:

1.      enter Defendant Rafael Dario Ramirez Carreno's default; and

2.      enter a default judgment against Defendant Rafael Dario Ramirez Carreno in the amount of $472,039,552.66.

SIGNED on ___December 19___, 2018, at Houston, Texas.

                                        Lee H. Rosenthal
                           Chief United States District Judge

HARVEST_RDR_000508